## JOANNA UPTON *vs.* JWP BUSINESSLAND.

Norfolk. May 7, 1997. - August 18, 1997.

Present: WILKINS, C.J., ABRAMS, O'CONNOR, GREANEY, & MARSHALL, JJ.

*Contract,* Employment. *Public Policy. Employment,* Termination. *Estoppel.*

Discussion of the circumstances in which an at-will employee may maintain an action for wrongful discharge. [757-758]

The termination of an at-will employee for her refusal to work long hours based on the employee's need to be with her young child did not violate public policy and could not form the basis of an action for wrongful discharge. [758-760]

The record on summary judgment of a claim that the defendant employer was estopped to discharge the plaintiff employee did not establish that the plaintiff reasonably relied to her detriment on the defendant's representations regarding her hours of work. [760]

CIVIL ACTION commenced in the Superior Court Department on February 24, 1992.

The case was heard by *Patrick F. Brady,* J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Harvey A. Schwartz* for the plaintiff.

WILKINS, C.J. The plaintiff, a former at-will employee of the defendant and a divorced single parent, appeals from the entry of summary judgment for the defendant. She asserts that the defendant discharged her when, because of the need to be with her young son, she was unwilling to work long hours. She argues that such a discharge is contrary to public policy and entitles her to damages. We granted the plaintiff's application for direct appellate review. We affirm the judgment.

For the purpose of considering the propriety of the allowance of the defendant's motion for summary judgment, the following facts are relevant. At the time of her discharge, the plaintiff was the mother of a young son whom she cared for herself and supported entirely from her earnings. She commuted from Cape

Cod to work for the defendant in Canton. When she was hired in April, 1991, she was told that her hours of work would be 8:15 A.M. to 5:30 P.M., with the need to work late on one or two days each month. The plaintiff arranged child care accordingly. In fact, the requirements of her job kept her until 6:30 P.M. to 7 P.M. from the outset and even later as the job progressed. In late July, 1991, the plaintiff was told that she would have to work until 9 or 10 P.M. each evening and all day Saturday for at least several months. The plaintiff informed her employer that she would not be able to work such hours because of her responsibilities as a mother. She was discharged two weeks later.

The general rule is that an at-will employee may be terminated at any time for any reason or for no reason at all. See *Folmsbee* v. *Tech Tool Grinding & Supply, Inc.*, 417 Mass. 388, 394 (1994); *Jackson* v. *Action for Boston Community Dev., Inc.*, 403 Mass. 8, 9 (1988). Liability may be imposed on an employer, however, if an at-will employee is terminated for a reason that violates a clearly established public policy. See *King* v. *Driscoll*, 418 Mass. 576, 582 (1994); *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 810 (1991); *DeRose* v. *Putnam Mgt. Co.*, 398 Mass. 205, 210 (1986). The public policy exception makes redress available to employees who are terminated for asserting a legal right (e.g., filing a workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to disobey the law (e.g., refusing to commit perjury). See *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 149-150 (1989). We have identified additional reasons for terminations which would directly contradict well-defined public policies of the Commonwealth. See *Flesner* v. *Technical Communications Corp.*, *supra* at 811 (at-will employee cooperated with law enforcement agency investigation of his employer); *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413, 416 (1988) (at-will employee allegedly discharged for enforcing safety laws which were her responsibility to enforce); *DeRose* v. *Putnam Mgt. Co.*, *supra* at 209-211 (at-will employee refused to give false testimony against coworker in criminal trial). See also *Shea* v. *Emmanuel College*, *post* 761, 762-763 (1997) (at-will employee who internally reports suspected criminal wrongdoing occurring within company entitled to recover when discharged for making such report).

On the other hand, we have held that other reasons for

termination do not warrant recovery by an at-will employee. See *King* v. *Driscoll, supra* at 583 (participation in shareholder derivative suit); *Folmsbee* v. *Tech Tool Grinding & Supply, Inc., supra* at 394-395 (failure to comply with employer's internal policy of mandatory drug testing); *Wright* v. *Shriners Hosp. for Crippled Children*, 412 Mass. 469, 475-476 (1992) (nurse made internal reports of problems to high-ranking officials within hospital organization); *Korb* v. *Raytheon Corp.*, 410 Mass. 581, 584 (1991) (employee hired as corporation's spokesperson publicly expressed views which conflicted with corporation's economic interests); *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch., supra* at 151 (employee expressed disagreement with employer's reorganization plan — "[a]n employee, even one in a socially important occupation, who simply disagrees with her employer's policy decisions, may not seek redress in the courts"); *Mello* v. *Stop & Shop Cos.*, 402 Mass. 555, 560-561 (1988) (employee reported false damage claims which were internal company matters). See also *Mistishen* v. *Falcone Piano Co.*, 36 Mass. App. Ct. 243, 245-246 (1994) (discharge of at-will employee in retaliation for her internal complaints regarding company's trade practices, which she claimed were in violation of G. L. c. 93A).

The plaintiff seeks to recover for a termination that was not, on its face, made because she did something that public policy strongly encourages (such as serving on a jury) or because she refused to engage in conduct that public policy strongly discourages (such as refusing to lie on behalf of her employer). There is no clearly established public policy which requires employers to refrain from demanding that their adult employees work long hours. Nor is any public policy directly served by an employee's refusal to work long hours. Because no public purpose is served by the conduct for which the plaintiff asserts she was discharged, this case is unlike those cases in which we have held that the employer may be liable for the discharge of an at-will employee.

To advance her claim that her termination violated public policy, the plaintiff relies on the Commonwealth's strong policy favoring the care and protection of children. Her theory is that an employer may not properly discharge an employee whose refusal to work long hours is based on her sense of obligation to be with her young child. She argues that meeting the defendant's demands regarding work hours would cause her to neglect her child in contravention of public policy.

The plaintiff asserts that cases involving eligibility for unemployment compensation directly support her theory. The judge correctly concluded that the Commonwealth's broad policies of protecting the family unit and promoting the best interests of children do not transform the discharge of an at-will employee who cannot work particular hours required by her employer into a discharge in violation of a well-defined public policy. The judge noted that, although the Legislature has established rights to unemployment compensation (G. L. c. 151A) for certain former employees, compensation is not available in every instance in which an at-will employee experiences a conflict between job requirements and parental responsibilities.[1] A policy that says that, if domestic responsibilities limit a person's availability to work, unemployment compensation may nevertheless be available does not translate into a policy that an employer is liable to a former employee for discharging her in comparable circumstances. The Legislature has directed that unemployment compensation should be available to such a person, but it has not provided that such an employee has an action for wrongful discharge.

The Legislature has not announced a public policy position in the area of unemployment compensation that is as broad as the one that the plaintiff urges us to identify. Nor has any court to our knowledge allowed recovery against an employer who terminated an at-will employee who refused to work newly imposed hours due to an irreconcilable conflict between her new work schedule and the obligations of parenting. There is no

---

[1]In *Conlon* v. *Director of the Div. of Employment Sec.*, 382 Mass. 19, 19 (1980), a woman sought to continue to receive unemployment benefits in circumstances in which she had "restricted her availability for work to a daytime shift which was consistent with her fulfilment of responsibilities to her children." We remanded the proceeding to the agency so that it could determine whether the employee had "good cause" to decline to seek or accept employment at any other time of day and, if she did have a valid reason for doing so, whether she so limited her availability that "she effectively removed herself from the labor force." *Id.* at 25. See *Zukoski* v. *Director of the Div. of Employment Sec.*, 390 Mass. 1009 (1984); *Manias* v. *Director of the Div. of Employment Sec.*, 388 Mass. 201, 204 (1983).

The Legislature has included within the functions, powers, and duties of the Massachusetts Commission Against Discrimination complaints "alleging discrimination because of . . . children." G. L. c. 151B, § 3. This case does not appear to involve unlawful discrimination, and, in any event, the reference to "children" was added to G. L. c. 151B, § 3, after the plaintiff's discharge. St. 1991, c. 323, § 1.

public policy which mandates that an employer must adjust its expectations, based on a case-by-case analysis of an at-will employee's domestic circumstances, or face liability for having discharged the employee. *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 150 (1989). Construing the public policy exception to cover terminations of employees in the plaintiff's situation would tend to convert the general rule "into a rule that requires just cause to terminate an at-will employee." *Smith-Pfeffer* v. *Superintendent of the Walter E. Fernald State Sch.*, *supra.* Liability to an at-will employee for a discharge in violation of public policy must be based on general principles, and not on the special domestic circumstances of any particular employee.

The plaintiff argues briefly that the defendant was estopped from firing her because she relied to her detriment on the defendant's representations regarding her expected hours of work. To avoid the entry of summary judgment against her, an at-will employee asserting estoppel would have to show that she reasonably relied on an unambiguous promise. See *Rhode Island Hosp. Trust Nat'l Bank* v. *Varadian*, 419 Mass. 841, 848 (1995). The summary judgment record shows no such promise, only that the plaintiff asked about regular work hours and was so told. No promise in a contractual sense is shown. *Id.* at 850.

We sympathize with the difficulties of persons in the position of the plaintiff who face the challenge of reconciling parental responsibilities with the demands of employment. However, employer liability under common-law principles is not an appropriate means of addressing the problem in the at-will employment context.

*Judgment affirmed.*