Chin, J.

INTRODUCTION

Plaintiff Joyce Fiorilio filed the present action against defendant May Department Stores Company for breach of contract, defamation and infliction of emotionail distress in connection with the termination of her employment with Filene’s department store. This matter is before the court on the defendant’s motion for summary judgment pursuant to Mass.R.Civ.P. 56. For the reasons discussed below, the defendant’s motion is ALLOWED.

BACKGROUND

The undisputed facts as revealed by the summary judgment record are as follows.
Plaintiff Joyce F. Fiorilio (Fiorilio) was employed by defendant May Department Stores Company (Filene’s) as a cash office associate in its Hanover, Massachusetts Filene’s store from September of 1989 until February of 1994. Fiorillo’s job application stated, “I understand that if employed by Filene’s, I will be an employee ‘at will’ who may be terminated with or without cause at any time and that no verbal promises or guarantees relating to employment are binding upon the Company.” Fiorilio was an hourly employee whose duties included working on the computer doing price changes and transfers, as well as gift wrapping. Shortly after beginning her employment with Filene’s, on September 7, 1989, Fiorilio was given a “Welcome to Filene’s Tradition” rule booklet (the Booklet) and signed an acknowledgment which stated:
I hereby acknowledge that I have received a copy of the “Welcome to Filene’s” booklet and I understand and agree that it does not constitute an employment contract; however, I am responsible for following the provisions contained in it, and may be subject to disciplinary action up to and including termination for any violation of its rules and regulations.
The Booklet itself states that it is not a contract and may be changed from time to time. It further states that Filene’s associates are not employed for a set term and that either the associate or the company can terminate the employment relationship at any time. The booklet enumerates “Causes for Disciplinary Action” and “Causes for Immediate Discharge” but also states that the lists provided are not all-inclusive. The Booklet does not set forth any specific procedure for investigating violations, nor does it contain any provision for progressive discipline.
In late 1993, after being absent from work on several occasions for medical reasons, Fiorilio told assistant operations manager Carol Hamilton (Hamilton) that she had diabetes. On February 15, 1994, Fiorilio was told that Hamilton wanted to see her. In Hamilton’s office were two Filene’s management associates, as well as Investigator Dennis Rudolph and Lead Security Associate Scott Roberts. Hamilton asked Fiorilio if she had used her own register to ring in payments to her Filene’s credit card account, and Fiorilio responded that she had. When Hamilton stated that such conduct was in violation of company policy, Fiorilio said that she had not known her actions were wrong. Fiorilio was aware that the Filene’s handbook prohibited cashiers from ringing up their own sales, returns or exchanges, but did not believe that making payments to one’s own account was prohibited. Hamilton then asked Fiorilio to make a written statement, and Fiorilio complied. Hamilton told Fiorilio to leave the store and stated that she would let her know whether or not she would be terminated.
*479 The next day, February 16, Hamilton informed Fiorillo that Filene’s was terminating her employment. Hamilton told Fiorillo that in the past, Filene’s had terminated other employees for the same offense. Following Fiorillo’s termination, Filene’s circulated a memo, which all employees were required to sign, stating that no one was to make payments on their own credit card account.
During her employment, Fiorillo participated in Filene’s profit-sharing plan by making voluntary payments into the plan. Filene’s matched its employees’ contributions to the plan and after five years, an employee’s right to receive 60% of Filene’s contributions vested. At the time of her termination, Fiorillo had worked for Filene’s for four and one half years. Following her termination, Fiorillo never received a check for the money she had contributed to the profit-sharing plan, nor did she ever call Filene’s to request such money. In April of 1994, Fiorillo went to the Hanover store to make a credit card payment. A customer service employee told Fiorillo that the company had circulated a memo about making one’s own credit card payments and asked, “That’s why you were fired, wasn’t it?” Following Fiorillo’s termination, Filene’s offered her a job as a sales associate in the men’s department of the Hanover store, but Fiorillo declined, stating that she wanted her old job back.
Thereafter, on February 12, 1997, Fiorillo filed the present action against Filene’s alleging breach of contract in Count I, breach of the covenant of good faith and fair dealing in Count II, wrongful termination in Count III, defamation in Count IV, intentional infliction of emotional distress in Count V and negligent infliction of emotional distress in Count VI. Filene’s now moves for summary judgment on all counts of the complaint.

DISCUSSION

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l. Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Filene’s first moves for summary judgment on Count I of the complaint on the ground that Fiorillo has no reasonable expectation of proving at trial that Filene’s breached an employment contract with her. It is well established that an employee at will may be terminated by an employer, without notice, at any time for any reason or for no reason at all. GTE Products Corp. v. Stewart, 421 Mass. 22, 26 (1995); Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9 (1988). Massachusetts law assumes at will employment unless there exists an express or implied contract governing the terms and conditions of employment. GTE Products Corp. v. Stewart, 421 Mass. at 26; Jackson v. Action for Boston Community Dev., Inc., 403 Mass. at 9. Both Fiorillo’s job application and the Booklet state that she was an employee at will.
Nonetheless, under the circumstances of a particular employment relationship, a personnel manual distributed by an employer to its employees may form the basis of an implied employment contract. O'Brien v. New England Telephone & Telegraph Co., 422 Mass. 686, 691 (1996); Derrig v. Wal-Mart Stores, Inc., 942 F.Sup. 49, 54 (D.Mass. 1996). In determining whether a personnel manual or similar document is binding as a contract, the central inquiry is whether in light of the context of the manual’s preparation and distribution as well as its specific provisions, it would be reasonable for employees to regard the manual as a legally enforceable, binding commitment concerning the terms and conditions of employment. O’Brien v. New England Telephone & Telegraph Co., 422 Mass. at 694; Hinchey v. Nynex Corp., 144 F.3d 134, 141 (1st Cir. 1998). Factors to be considered include whether there was negotiation over the terms of the personnel manual; whether the employee signed the manual, manifested assent to it or acknowledged understanding of its terms; and whether the manual provides only management directives or general guidance as to the employer’s policies, or whether it sets forth detailed mandatory conduct, mutual obligations, promises of treatment and benefits, and procedures for employees and employer to follow. O’Brien v. New England Telephone & Telegraph Co., 422 Mass. at 692-93; Derrig v. Wal-Mart Stores, Inc., 942 F.Sup. at 54-55; Hinchey v. Nynex Corp., 144 F.3d at 141. Finally, express disclaimers concerning the creation of contractual or legal rights and the reservation of a right to unilaterally change or discontinue the terms of the manual are relevant to the inquiry, although not dispositive, since the idea that an employer may ignore promises made in a personnel manual is in increasing disfavor in this country. O’Brien v. New England Telephone & Telegraph Co., 422 Mass. at 691, 694; Derrig v. Wal-Mart Stores, Inc., 942 F.Sup. at 54.
In the present case, the Booklet clearly states that Filene’s associates are employees at will who can be fired at any time, and that the Booklet itself is not a contract and may be changed from time to time. Filene’s did emphasize the Booklet and require em *480 ployees including Fiorillo to assent to and acknowledge understanding of its terms. The record is devoid of any evidence with respect to whether employees negotiated over the terms of the Booklet. It is clear, however, that while the Booklet provides general guidance as to the employer’s policies and sets forth some required conduct for employees, it does not make promises of treatment with respect to discipline, nor does it establish any procedures for the employer to follow. Under these circumstances, it would not be reasonable for an employee such as Fiorillo to regard the Booklet as a legally enforceable, binding commitment concerning the terms and conditions of employment. Thus, because Fiorillo has no reasonable expectation of proving the existence of an employment contract, Filene’s is entitled to judgment as a matter of law on Count I.
Filene’s further moves for summary judgment on Count II of the complaint on the ground that Fiorillo has no reasonable expectation of proving that it breached the implied covenant of good faith and fair dealing in terminating her. An employer breaches this covenant when it terminates an at will employee for the purpose of depriving the employee of compensation for past services. McCone v. New England Telephone & Telegraph Co., 393 Mass. 231, 235 (1984); Fortune v. National Cash Register Co., 373 Mass. 96, 105 (1977). This exception to the at will rule serves to deny an employer a financial windfall resulting from the employee’s termination, and applies only to the loss of compensation clearly related to an employee’s past service rather than future wages or fringe benefits, such as salary increases and pension benefits, which the employee might have earned had she remained employed. Gram v. Liberty Mutual Ins. Co., 391 Mass. 333, 334-35 (1984). McCone v. New England Telephone & Telegraph Co., 393 Mass. at 234-35.
In the present case, even assuming that the vesting of Fiorillo’s right to Filene’s contributions to her profit-sharing plan constitutes compensation clearly related to her past service, she nonetheless has no reasonable expectation of proving that Filene’s breached the covenant of good faith and fair dealing. Foremost, it should be noted that Fiorillo was fired a full six months before her benefits were to vest. Further, the record is devoid of any evidence to suggest that Filene’s real motivation for terminating her was to deprive her of her profit-sharing benefits rather than the asserted reason, because she was believed to have violated company policy. Thus, Fiorillo has failed to raise a genuine issue of material fact with respect to whether Filene’s received an unjust windfall by terminating her. Compare Maddaloni v. Western Mass. Bus Lines, Inc., 386 Mass. 877, 881-82 (1982) (concluding that a jury could properly find bad faith where the employer made a reference to the plaintiffs commissions when terminating him, and there was evidence that the company’s proffered reason for the termination, poor profits, was false); Fortune v. National Cash Register Co., 373 Mass. at 105 (stating that there was a jury issue with respect to the employer’s motive where it terminated a sales agent, without giving any reason, when he was “on the brink” of completing sales entitling him to commissions). Accordingly, Filene’s is entitled to summary judgment on Count II of the complaint.
Further, Fiorillo has no reasonable expectation of prevailing at trial on Count III for wrongful termination. It is well established that liability may be imposed on an employer if an at-will employee is terminated for a reason that violates a clearly established public policy. Upton v. JWP Businessland, 425 Mass. 756, 757 (1997); Flesner v. Technical Communications Corp., 410 Mass. 805, 810 (1991). The public policy exception makes redress available to employees who are terminated for asserting a legal right, for doing what the law requires, or for refusing to disobey the law. Upton v. JWP Businessland, 425 Mass. at 757.
Although a basis for common law liability may be found when the Legislature has expressed a policy position concerning the rights of employees and an employer discharges an at-will employee in violation of that policy, where the Legislature has also prescribed a statutory remedy, the common law public policy exception is not called into play. King v. Driscoll, 418 Mass. 576, 584 (1994); Ourfalian v. Aro Manufacturing Co., 31 Mass.App.Ct. 294, 296 (1991). In the present case, the only public policy Fiorillo has suggested with respect to her termination is discrimination based on the fact that she suffered from diabetes. General Laws Chapter 151B provides a comprehensive legislative scheme to protect against discrimination based on handicap and to provide employees with a remedy for violations of said public policy. Compare Melly v. Gilette Corp., 19 Mass.App.Ct. 511, 512-13 (1985), aff'd, 397 Mass. 1004 (1986). Accordingly, the public policy exception does not come into play in the present case and Fiorillo’s exclusive remedy is redress under Chapter 15IB. See Id. Thus, Filene’s is entitled to judgment as a matter of law on Count III of the complaint.
Filene’s next moves for summary judgment on Count IV of the complaint on the ground that Fiorillo has no reasonable expectation of proving defamation at trial. Defamation is the intentional or reckless publication, without privilege to do so, of a false statement of fact which injures the plaintiffs reputation. Correllas v. Viveiros, 410 Mass. 314, 319 (1991). Foremost, it should be noted that Fiorillo has utterly failed to identify any specific statements by Filene’s which are defamatory. However, she appears to rely on statements made by Hamilton and others present during the February 15 meeting. Further, Fiorillo suggests that Filene’s must have made some statement concerning her to other employees based on the fact that in April of 1994, the unidentified customer service *481 employee commented that Fiorillo had been terminated for ringing in her own credit card payment.
However, even if Fiorillo had met her burden of identifying the statements alleged to be defamatory, she could not prevail on Count IV of the complaint. With respect to the statements made on February 15 that Fiorillo had violated company policy, such statements were substantially true and cannot form the basis of liability. See Milgroom v. News Group Boston, Inc., 412 Mass. 9, 12 (1992); McAvoy v. Shuffin, 401 Mass. 593, 597 (1988). Further, it is well established that an employer has a conditional privilege to disclose defamatory material in furtherance of a legitimate business interest such as determining an employee’s fitness to do her job. Foley v. Polaroid Corp., 400 Mass. 82, 94 (1987); Bratt v. International Business Machines Corp., 392 Mass. 508, 512-13 (1984). The statements made on February 15 involved the investigation of suspected employee misconduct and thus served a legitimate business purpose. A defendant loses the conditional privilege if the plaintiff meets the burden of demonstrating unnecessary, unreasonable or excessive publication, or that the defendant published the statements with the intent to injure or in reckless disregard of the truth. Foley v. Polaroid Corp., 400 Mass. at 95; Bratt v. International Business Machines Corp., 392 Mass. at 514-15. In the present case, however, Fiorillo has failed to introduce any evidence to raise a genuine issue of material fact with respect to whether Filene’s acted recklessly so as to forfeit its privilege. Despite the fact that a customer service employee was apparently aware of the reason for Fiorillo’s termination, there is simply no evidence in the summary judgment record that management improperly published statements concerning Fiorillo to employees outside the narrow group of people sharing a legitimate interest in the publication. Compare Draghetti v. Chmielewski, 416 Mass. 808, 813-14 (1994). Accordingly, Filene’s is entitled to judgment as a matter of law on Count IV of the complaint.
Finally, Filene’s moves for summary judgment on Fiorillo’s claims for intentional and negligent infliction of emotional distress. It is well established that common law actions for intentional and negligent infliction of emotional distress arising out of and in the course of employment are barred by the exclusivity provision of the workers’ compensation act, G.L.c. 152, §24. Green v. Wyman-Gordon Co., 422 Mass. 551, 558-59 (1996); Catalano v. First Essex Savings Bank, 37 Mass.App.Ct. 377, 380-81, rev. den., 419 Mass. 1101 (1994). Fiorillo’s claims of emotional distress clearly relate to her termination from employment by Filene’s and are therefore barred.
Moreover, on the present summary judgment record, Fiorillo has no reasonable expectation of prevailing on a claim of intentional infliction of emotional distress. To establish such a claim, Fiorillo must show that Filene’s intended to inflict emotional distress or knew or should have known that such distress was the likely result of its conduct, that Filene’s conduct was extreme and outrageous, and that said conduct caused Fiorillo severe emotional distress of such a nature that no reasonable person could be expected to endure it. Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976); Brown v. Nutter, McClennan & Fish, 45 Mass.App.Ct. 212, 218 (1998). Filene’s conduct in the present case falls far short of this standard as a matter of law. Accordingly, Filene’s is entitled to summary judgment on Counts V and VI of the complaint.

ORDER

For the foregoing reasons, it is hereby ORDERED that May Department Stores Company’s motion for summary judgment be ALLOWED on all counts of the complaint.