**Eddie ELICIER, Plaintiff,**

v.

**TOYS "R" US, INC., Defendant.**

**CIV.A. No. 99–40185–NMG.**

United States District Court,
D. Massachusetts.

Feb. 22, 2001.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Following the termination of his employment, plaintiff, Eddie Elicier ("Elicier"), filed suit against defendant, Toys "R" Us, Inc. ("Toys 'R' Us"), in Massachusetts state court, alleging 1) defamation, 2) breach of an implied covenant of good faith and fair dealing, and 3) false light invasion of privacy. On October 22, 1999, Toys "R" Us removed the case to this Court on diversity grounds and, more recently, has filed the pending motion for summary judgment (Docket No. 10).

## I. *Background*

Toys "R" Us has its principal place of business in Paramus, New Jersey and at all times relevant to this action, operated a distribution center in Northboro, Massachusetts. Elicier was employed, on an at-will basis, in operations from August 28, 1995 until his termination on December 8, 1998. Toys "R" Us asserts that Elicier acknowledged his at-will status by signing the following certification as part of his job application:

> If employed by Toys "R" Us,...I will abide by its rules and regulations and understand that they may be changed at any time. I further understand that my employment is at-will and can be terminated with or without cause and with or without notice, at any time, at the option of either the Company or myself.

Toys "R" Us also alleges that when Elicier commenced employment, he was provided with a copy of "the Company's Rules and Regulations" which provided in pertinent part:

> The items listed below are examples of conduct that are subject to disciplinary action which, depending on the circumstances, may range from verbal warning to discharge. The list is not all inclusive and appropriate action may be taken by the company when other behavior is deemed improper or inappropriate.

During his deposition, Elicier acknowledged that he understood that Toys "R" Us could terminate his employment if it was dissatisfied with his performance.

In July, 1998, Elicier received two warnings from Toys "R" Us. The first was issued because Elicier violated company policy by failing to notify Toys "R" Us that he would be absent from work. He was warned a second time because he failed to complete and sign the required paperwork for his assignments.

In December, 1998, Elicier's scheduled work hours were 6:30 a.m. to 3:00 p.m., during which time employees were permitted to take certain breaks. On December 7, 1998, Elicier was scheduled to work two hours of overtime at the end of his shift (from 3:00 p.m to 5:00 p.m.). At 3:00 p.m., Elicier left his work area, walked out of the facility and had a conversation with an ex-employee in the Toys "R" Us parking lot. He returned to his work area 12 to 15 minutes later, and shortly thereafter, was informed by a supervisor that such conduct was unacceptable.

The following day, December 8, 1998, Elicier was escorted to a meeting conducted by Tony Angotti, a senior manager. Three other Toys "R" Us representatives were present at the meeting: Guillermo Viscarra and Al Souza (both Toys "R" Us supervisors) and Stacey Micka (senior hu-

man resources officer at the Northboro facility).

The parties dispute what happened at that meeting. According to the plaintiff, Angotti accused him of selling drugs on the Toys "R" Us premises and told him that he would be fired. When Elicier requested that those allegations be reduced to writing, Angotti allegedly responded that he was going to fire Elicier, not for the suspected drug involvement, but for the time he had "stolen" from Toys "R" Us (i.e. the unauthorized 15 minute break he had taken the preceding day). Toys "R" Us contends that Angotti discharged Elicier for the unauthorized break but never accused him of selling drugs. In fact, Toys "R" Us claims that when informed of the basis for his discharge, Elicier himself asserted that he was being accused of selling drugs although Mr. Angotti and Mr. Viscarra assured him that was not the case.

## II. *Summary Judgment Standard*

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(*quoting Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only where the party opposing summary judgment provides evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists, summary judgment is appropriate.

## III. *Analysis*

### A. Count I: Defamation

■ Elicier contends that Mr. Angotti's alleged statement accusing him of selling drugs was made negligently or with reckless disregard to its truth, and has caused severe damage to his reputation. Toys "R" Us denies that Mr. Angotti made such a statement but contends that it is entitled to summary judgment even if he did.

■ Defamation is the intentional or reckless publication, without privilege to do so, of a false statement of fact which causes damage to the plaintiff's reputation. *Correllas v. Viveiros*, 410 Mass. 314, 319, 572 N.E.2d 7 (1991). The Massachusetts Supreme Judicial Court has held, in that regard, that

> [a]n employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of the employee to perform his or her job.

*Foley v. Polaroid Corp.*, 400 Mass. 82, 94, 508 N.E.2d 72 (1987)(*quoting Bratt v. International Business Machs. Corp.*, 392 Mass. 508, 509, 467 N.E.2d 126 (1984)). Once an employer's conditional privilege is recognized, the burden shifts to the employee to prove that the privilege was abused. *Id.* at 95, 508 N.E.2d 72. On a motion for summary judgment, the employee must satisfy that burden with "clear and convincing" evidence. *Catrone v. Thoroughbred Racing Associations of*

*North America, Inc.,* 929 F.2d 881, 889 (1st Cir.1991).

■ The conditional privilege can be lost through either "unnecessary, unreasonable or excessive publication of the defamatory matter" or by publication of defamatory information with "actual malice". *Id.* "[W]hatever the manner of abuse, recklessness, at least, should be required" to defeat the privilege. *Bratt,* 392 Mass. at 515, 467 N.E.2d 126. "[A] statement made with knowledge of its falsity or with reckless disregard for the truth" constitutes reckless publication. *Foley,* 400 Mass. at 95, 508 N.E.2d 72.

In the instant case, there is no evidence of reckless publication. The alleged defamatory statement was made during a private meeting attended by three Toys "R" Us supervisors and a human resources manager, all of whom had a direct interest in monitoring the plaintiff's performance. Elicier argues that Angotti's statement nonetheless must have been published outside of that meeting because several Toy "R" Us employees testified, via affidavit, to hearing rumors that he had been terminated for dealing drugs. For example, fellow Toys "R" Us employee, Alexandro Lara ("Lara") testified that an unidentified person in Elicier's department told him that Elicier had been fired for dealing drugs. Lara also claims that Guillermo Viscarra, a supervisor present at the meeting at which Elicier was terminated, told him that Elicier had been under investigation for selling drugs.

■ The publication of a defamatory statement to other employees does not, however, without more, establish recklessness. *See McCone v. New England Tel. & Tel. Co.,* 393 Mass. 231, 236, 471 N.E.2d 47 (1984) (even assuming supervisor published plaintiff's poor evaluations to someone other than the department head, plaintiff failed to establish recklessness). And the mere fact that some Toys "R" Us employees may have heard a rumor that Elicier was terminated for dealing drugs does not prove reckless publication. *See Fiorillo v.*

*May Dep't Stores Co.,* No. 97–198A, 2000 WL 804649, at *5 (Mass.Super.Ct. Feb. 14, 2000)(finding no evidence that management improperly published statements concerning plaintiff although customer service employee was aware of the reasons for the plaintiff's termination). Finally, recklessness would not be established even if Angotti wrongfully accused Elicier of a criminal act without evidence that he disbelieved the accusation or that his belief was not reasonably grounded. *See Fowler v. Sohio Oil Co.,* No. 88–2533-WD, 1990 WL 320042, at *5 (D.Mass. January 9, 1990)("[i]mposing a duty of affirmative verification is not consistent with the conditional privilege").

■ Elicier also fails to present any evidence of actual malice. To prove actual malice, there must be a showing that the defamatory words "were spoken out of some base ulterior motive". *Dexter's Hearthside Rest., Inc. v. Whitehall Co.,* 24 Mass.App.Ct. 217, 223, 508 N.E.2d 113 (1987), *rev. denied,* 400 Mass. 1104, 511 N.E.2d 620 (1987). The record is simply devoid of facts from which an ulterior motive on the part of Toys "R" Us could be inferred. In fact, Elicier acknowledged in his deposition testimony that he had a good working relationship with the Toys "R" Us managers who participated in the termination meeting.

Courts have routinely granted summary judgment to employers in cases similar to the case at bar. *See, e.g., Thomas v. Sears, Roebuck & Co.,* 144 F.3d 31, 34 (1st Cir.1998)(affirming summary judgment on defamation claims arising out of comments made in internal company feedback and deficiency memoranda); *Galdauckas v. Interstate Hotels Corp. No. 16,* 901 F.Supp. 454, 470–71 (D.Mass.1995)(granting summary judgment on defamation claim arising out of alleged negative statements in plaintiff's personnel file); *Mullen v. Ludlow Hosp. Soc'y,* 32 Mass.App.Ct. 968, 971, 592 N.E.2d 1342 (1992)(affirming summary judgment on defamation claim arising out

of supervisor's negative comments about plaintiff's work performance), *rev. denied,* 413 Mass. 1103, 598 N.E.2d 1133 (1992). Elicier has not presented evidence sufficient to raise a genuine issue of material fact with respect to whether Toys "R" Us abused the qualified privilege to which it was entitled. Accordingly, defendant's motion for summary judgment on the defamation claim will be allowed.

### B. Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing

Elicier alleges that Toys "R" Us breached its duty of good faith and fair dealing 1) by terminating his employment without any prior warnings or a probationary period, and 2) because Toys "R" Us had "an additional motive" for such termination.

As an at-will employee, Elicier's employment could be terminated by the defendant at any time for any or no reason. *Wright v. Shriners Hosp. for Crippled Children,* 412 Mass. 469, 472, 589 N.E.2d 1241 (1992). Applying the doctrine set forth in *Fortune v. National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977), Massachusetts courts recognize a claim for breach of the implied covenant of good faith and fair dealing, however, where the plaintiff is owed compensation for past services, *McCone v. New England Tel. & Tel. Co.,* 393 Mass. 231, 233–35, 471 N.E.2d 47, (1984), or where the employee's discharge is contrary to public policy. *Upton v. JWP Businessland,* 425 Mass. 756, 757, 682 N.E.2d 1357 (1997).

Elicier offers no evidence that Toys "R" Us failed to pay him all compensation to which he was entitled up to the date of termination. In fact, in his deposition Elicier admits that Toys "R" Us paid him completely for his services. The fact that Elicier may have been discharged without prior warnings, a probationary period or a good faith investigation of his alleged drug dealing is irrelevant. *See Tenedios v. Wm.*

*Filene's Sons Co.,* 20 Mass.App.Ct. 252, 255, 479 N.E.2d 723 (1985)(finding alleged bad faith termination of employee for larceny without warning or investigation insufficient to establish breach of the implied covenant of good faith and fair dealing).

Moreover, Elicier neither alleges nor offers evidence to suggest that his termination was in violation of a particular public policy. The public policy exception to at-will employment "makes redress available to employees who are terminated for asserting a legal right..., for doing what the law requires..., or for refusing to disobey the law...." *Upton,* 425 Mass. at 757, 682 N.E.2d 1357. No such policy is implicated here. Accordingly, Toys "R" Us is entitled to summary judgment on Count II as well.

### C. Count III: Invasion of Privacy (False Light)

Massachusetts law does not recognize a cause of action for false light invasion of privacy. *Brown v. Hearst Corp.,* 54 F.3d 21, 27 (1st Cir.1995); *Elm Medical Laboratory, Inc. v. RKO General, Inc.,* 403 Mass. 779, 787, 532 N.E.2d 675 (1989). Accordingly, Elicier's false light claim cannot withstand a motion for summary judgment.

### ORDER

For the reasons set forth in the Memorandum above, the motion of the defendant, Toys "R" Us, Inc., for summary judgment (Docket No. 10) is ALLOWED.

So ordered.