Haggerty, J.
The plaintiff, Gerard Boudreault (“Boudreault” or “the plaintiff’) brought this action against the defendants Chesapeake Biological Laboratories, Inc. (“Chesapeake”) and Transkaryotic Therapies, Inc. (“TT”). In his Second Amended Complaint, Boudreault alleges slander against Chesapeake (Count I), wrongful termination against TT (Count II), and Intentional Interference with Contractual Relations against Chesapeake (Count III). The defendant, TT, now moves to dismiss Count II, pursuant to Mass.R.Civ.P. 12(b)(6). For the following reasons, TT’s motion to dismiss is ALLOWED.
BACKGROUND
These are the relevant allegations contained in the Second Amended Complaint. The plaintiff, Boudreault worked for TT as a Contract Manufacturing manager from January 31, 2000, until September 25, 2000. Part of Boudrealt’s job was to monitor the manufacturing process used by Chesapeake, with whom TT had contracted to produce a biological product.
In or around June 2000, Boudreault noticed some deficiencies in the quality of Chesapeake’s product. He believed these deficiencies made the product unmarketable, created a public safety hazard, and violated guidelines of the Food and Drug Administration. He also believed that it was unlawful for Chesapeake to fail to implement a system to remove contaminants from the product prior to marketing. Boudreault brought these alleged deficiencies and unlawful activities to Chesapeake management and TT’s attention.
Shortly thereafter, Chesapeake informed TT that Boudreault would not be permitted on Chesapeake’s premises because other Chesapeake employees had made sexual harassment allegations against him. On September 22, 2000, TT offered Boudreault a severance package or a demotion because there was no comparable position for him at TT. When Boudreault returned to work on Monday, September 25, 2000, and agreed to accept the demotion, TT terminated his employment.
Boudreault alleges that TT wrongfully terminated his employment in violation of public policy because TT knew or should have known that Chesapeake was motivated to fabricate the sexual harassment charges to remove Boudreault from its premises so that it could continue with its alleged unlawful activities.
DISCUSSION
When reviewing a defendant’s motion to dismiss, the court considers only the pleadings. The court also treats all facts alleged in the complaint as true, and the plaintiff is entitled to all favorable inferences. General Motors Acceptance Corp. v. Abington Cas. Ins. Co., 413 Mass. 583, 584 (1992). The court only grants motions to dismiss if “it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” General Motor Acceptance Corp., 413 Mass. at 584, quoting Nader v. Citron, 372 Mass. 96, 98 (1997), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
As a general rule, an at-will employee can be discharged for any reason or for no reason at all. Upton v. JWP Businessland, Inc., 425 Mass. 756, 757 (1997); Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472 (1992), citing Jackson v. Action for Boston Cmty Dev., Inc., 403 Mass. 8, 9 (1998). There is an exception to the at-will employment rule if the reason for discharge violates a “clearly established public policy." Upton, 425 Mass. at 757. The Supreme Judicial Court has cautioned against interpreting the public policy exception so broadly that it requires just cause for termination. Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 150-51 (1989). Therefore, the clearly established public policies that provide employees with an exception to the at-will employment rule have been limited to asserting a legally guaranteed right, doing what the law requires, and refusing to do what the law forbids. See Wright, 412 Mass. at 473; Smith-Pfeffer, 404 Mass. at 149-50.
Here, the plaintiffs wrongful discharge cause of action must be dismissed because he has not alleged sufficient facts to establish that he was discharged in violation of a clearly established public policy. In fact, Boudreault only stated in his complaint that “the termination of the Plaintiff was in violation of a clearly established public policy.” He has not articulated what policy he believes the defendant violated.
Even if the failure to articulate the public policy TT has allegedly violated is not a ground for dismissal, the plaintiff has failed to allege sufficient facts to *236 support the allegation of wrongful discharge. In Shea v. Emmanuel College, 425 Mass. 761, 762-63 (1997), the Supreme Judicial Court held that terminating an employee for making an internal complaint about alleged criminal violations is a violation of public policy. Shea, however, is fundamentally different from the case at bar. In Shea, the plaintiff alleged that her employer was violating the criminal law. Here, Chesapeake is not Boudreault’s employer. Therefore, although the Shea court held that terminating an employee for making an internal complaint about alleged criminal activity does violate a clearly established public policy, the Shea holding is not applicable to TT in this case.
After Boudreault had been banned from Chesapeake’s site, he could not perform an essential function of his job, which was to monitor Chesapeake’s manufacturing process. TT then discharged him because there was no longer a job in existence for the plaintiff to perform. Therefore, TT did not violate any clearly established public policy when it terminated Boudreault’s at-will employment.
ORDER
For the reasons stated above, it is hereby ORDERED, that the Transkaryotic Therapies, Inc.’s Motion to Dismiss be ALLOWED.