Agnes, A.J.
The plaintiff, Dennis Barry (“Barry”), commenced this action against his former employer, the defendant, Chase Precast Corp. (“Chase”) alleging that Chase wrongfully terminated his employment. Specifically, Barry contends that his termination constituted a breach of contract, namely the employee handbook (Count I) and a violation of public policy (Counts II and III). This matter is now pending before the court on defendant Chase’s motion for summary judgment on all Counts of the complaint pursuant to Mass.R.Civ.P. 56. For the reasons discussed below, after a hearing and consideration of the record, summary judgment is ALLOWED as to all Counts.
SUMMARY JUDGMENT RECORD
The undisputed facts and the disputed facts and reasonable inferences viewed in the light most favorable to Barry are as follows. Chase manufactures precast concrete products at its facility in North Brookfield, Massachusetts. Chase hired Barry as a production worker on March 11, 1996. James Black (“Black”) supervised Barry and promoted him to “lead person” in 1998. Black rated Barry’s overall job performance as a production worker as “good” and according to Barry their relationship was “very good.” As lead person, Black deemed Barry’s job performance as “ok.”
On October 6, 1999, Black terminated Barry for violating the company’s “no-call, no-show” policy contained in the Employee Handbook (“Handbook”).[1] In August 1999, Barry signed an acknowledgment stating he received a copy of the Handbook. Barry also served on a committee to review all company policies, including the “no call, no show” policy. The policy required employees to notify their supervisor of an absence each morning before 8:00 a.m. An employee’s *284 failure to follow the outlined notification procedure constituted a “no call, no show.” According to the policy, Chase would automatically terminate an employee who failed to report an absence for three consecutive days.[2] The policy contained no exceptions covering Barry’s situation.[3]
On Saturday, September 25, 1999, after leaving work, Barry was injured in a car accident and hospitalized. On Sunday, September 26, 1999, Barry’s mother called Jim Jurzcyk, Chase’s plant manager, and informed him that Barry was injured and would not report to work the following day. Chase did not consider Barry a “no call, no show” on Monday, September 27. The parties dispute whether Bariy was a “no call, no show” thereafter.
Although Barry concedes that he did not report his absence each day to Chase, he contends that Chase was nonetheless aware at all times of his condition, inability to return to work and scheduled return date. According to Chase, Barry failed to work as scheduled or notify Chase pursuant to the policy on Tuesday, September 28, 1999, Wednesday, September 29, 1999, Thursday, September 30, 1999 and Friday, October 1, 1999.[4] The hospital discharged Barry in the afternoon on Thursday, September 30. It is also uncontroverted that Barry used the telephone during his hospitalization.
The Handbook entitles Chase employees aggrieved by application of the company policy to submit a grievance in accordance with the Handbook’s formal procedures. Barry never filed a grievance and Chase did not offer Barry the opportunity to file a grievance prior to terminating him.
Additional portions of the Handbook relevant to the court’s analysis are excerpted below.
Page eight under the caption “How To Use Your Handbook” states the following:
This handbook has been prepared to give you a general overview of the benefits and policies of our company . . . The handbook is intended to be used as a resource and information tool regarding the policies and procedures which affect your employment with the company. The company reserves the right to modify or change any part of the handbook’s contents. It is not intended to be understood or construed as a contract of employment. Your employment with the company is at-will and as such is terminable by you or the company at any time and for any reason.
You are urged to read this handbook carefully . . .
Page ten provides, in the section entitled “Employment Status”:
... All employees remain employees at-will, during the introductoiy period and at all times thereafter, any may be dismissed or leave their employment at any time without notice for any reason . . .
Additionally, page seventy-three states under the caption “A Word In Closing”:
... It should be understood that this handbook does not constitute a binding contract between the employer and the employee and is subject to be modified at the discretion of Chase Precast at any time . . .
DISCUSSION
A. Summary Judgment Standard
The court grants summary judgment where no genuine issue as to any material fact exists and where the summary judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983). The moving party, here Chase, bears the burden of affirmatively demonstrating the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Summary judgment is appropriate where the moving party either submits affirmative evidence that negates an essential element of the opposing party’s case or demonstrates that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Fiesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 715-16 (1991).
The adverse party may not defeat a motion for summary judgment by resting on the allegations of its pleadings, but must affirmatively set forth specific facts with affidavits, deposition transcripts, answers to interrogatories or admissions on file showing a genuine issue of triable fact. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). In setting out facts, the court resolves any conflicts in the summary judgment record and makes all logically permissible inferences in the non-moving party’s favor. Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982).
B. Implied Contract Claim
Chase argues that Barry has no reasonable expectation at trial of demonstrating a breach of an implied contract, namely the Handbook, because Barry remained at all times an employee at-will. Barry responds that genuine issues of material fact exist as to whether the Handbook created an implied contract such that the court should deny summary judgment.
Employment is presumed at-will unless an express or implied contract exists governing the terms and conditions of employment. Jackson v. Action for Boston Cmty. Dev., Inc., 403 Mass. 8, 9 (1988). An employee handbook can, under limited circumstances form the basis for an express or implied employment contract. Id. at 13. There is no “rigid list of prerequisites” to determine whether a bargained for contract exists. O’Brien v. New England Tel. & Tel Co., 422 Mass. 686, 692 (1996). Rather, the “central inquiry” is whether, considering the context of the manual’s preparation *285 and distribution as well as its specific provisions, an employee would be objectively reasonable in regarding the manual as a legally enforceable commitment concerning terms and conditions of employment. Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 779 (2001); Ferguson v. Host Int’l, Inc., 53 Mass.App.Ct. 96, 102 (2001).
In making such determination, courts should consider all relevant facts and circumstances, including whether (i) the employer unilaterally retained the right to modify the manual’s terms; (ii) the terms of the handbook were negotiated; (iii) the manual provided merely guidance as to the employer’s policies; (iv) the employment term was specified in the manual; (v) the employee signed or acknowledged the manual or the employer called special attention to the manual; and (vi) the employer had a practice of adhering to the manual’s procedures. Jackson, 403 Mass, at 14-15; O’Brien, 422 Mass, at 692-94.
Applying the aforementioned principles and considering all relevant facts and circumstances in the record, the court finds that Barry has no reasonable expectation of proving that the Handbook created binding contractual obligations. In several places, the Handbook disclaimed the conferral of any contractual rights on employees and reiterated Chase’s unilateral right to change or modify the Handbook’s contents. The disclaiming language also reaffirmed, in several places, that employment was at-will, terminable by the employer or the employee “at any time and for any reason.” In addition, the Handbook did not contain any stated employment term. Although Barry contends that the language stating employment may be terminated for “any reason” requires just cause, the very nature of the at-will arrangement implies that “any reason” includes “no reason.” Upton v. JWP Businessland, 425 Mass. 756, 757 (1997) (citations omitted) (reciting general rule that employment at-will terminable for any reason or for no reason at all). The Handbook’s disclaiming language was also conspicuous and in a normal typeface and font.
Barry contends that employees negotiated and participated in the revision and modification process of the Handbook, thereby rendering Chase’s discretionary right to modify it illusory. The only evidence before the court, however, is a single statement contained in Barry’s deposition that he served on a committee to review all company policies, including the “no call, no show” policy. Although the court gives due weight to this factor, the court is unable to infer that because Barry served on a policy review committee, he therefore negotiated and bargained for terms and conditions of his employment. Thus, that Barry served on the policy review committee does not justify the conclusion that his employment was something more than at-will. O’Brien, 422'Mass. at 692 (stating negotiations leading to an agreement would justify conclusion that more than at-will relationship existed).
Conversely, overall it appears the Handbook provided more than general guidance to employees. Although the Handbook states it is an “information tool” intended to provide employees with a “general overview” of Chase’s benefits, it set forth specific responsibilities and procedures. In addition, Chase also called special attention to the Handbook, having employees sign an acknowledgment receipt form and urging employees to read the Handbook carefully. These factors are insufficient, however, given the court’s consideration of all relevant facts and circumstances surrounding the context of the manual’s preparation and distribution.
Therefore, the court finds that no reasonable jury could conclude that Barry was justified in regarding the Handbook as a legally enforceable, binding commitment concerning the terms and conditions of his employment. Jackson, 403 Mass, at 14-15; O’Brien, 422 Mass, at 692-94. Accordingly, Chase is entitled to summary judgment on Count I of the complaint.
C. Termination in Violation of Public Policy Claim
Chase argues that Barry fails, as a matter of law, to state a common law claim for termination in violation of public policy. In opposition, Barry contends that Chase violated two public policies when the company terminated him for absenteeism. First, Barry claims that his termination violated Chase’s obligation to treat employees fairly and apply employment policies in a fair, reasonable and unbiased manner. Second, Barry contends that Chase, wrongfully and in violation of public policy, created a situation in order to justify his termination.
As a general rule, employment at-will is terminable by the employer or the employee for any reason or for no reason at all. Upton, 425 Mass, at 757. An at-will employee may, however, state a claim for wrongful discharge when the termination violates a “clearly established” public policy. Id. The existence of a well-defined public policy is a question of law committed to the court. Wright v. Shriners Hosp. for Crippled. Children, 412 Mass. 469, 472 (1992).
In Massachusetts, courts have narrowly construed the public policy exception to the at-will doctrine. Smith-Ffeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 150 (1989). For example, employees at-will may seek redress if terminated “for asserting a legal right (e.g., filing a workers’ compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to disobey the law (e.g., refusing to commit perjury).” Upton, 425 Mass, at 757.
There is no evidence in the summary judgment record to suggest that Chase terminated Barry in violation of a clearly established public policy. Rather, Barry’s public policy claims center on Chase’s application of its internal company policies regarding em *286 ployee absenteeism. The application of internal company policies is entrusted to those individuals with decision-making authority within Chase and may not form the basis of a public policy exception to the at-will rule. King v. Driscoll, 418 Mass. 576, 583 (1994) (stating “internal administration, policy, functioning, and other matters of an organization cannot be the basis for a public policy exception” to general at-will rule). While Chase’s decision to apply such rule on the facts of this case may appear rigid or severe, the severity of its application does not constitute a violation of public policy. Bariy has failed to point to a clearly defined public policy threatened by Chase’s action.
In addition, Barry's public policy argument would not be advanced even assuming, which the court does not, that the stated reason for Barry’s discharge, i.e., violation of the “no call, no show” was merely a pretext. An at-will employee may be terminated for any reason or for no reason at all. Mello v. Stop & Shop Cos., Inc., 402 Mass. 555, 557 (1988) (noting discharge of at-will employee without cause insufficient to impose liability). The Supreme Judicial Court has expressly stated that “an employer does not violate a public policy justifying the recovery of damages solely by giving a false reason for the discharge of an at-will employee.” Id. In sum, the court finds that Barry fails to state a common-law claim for termination in violation of public policy. Accordingly, Chase is also entitled to summary judgment on Counts II and III of the complaint.
ORDER
For the reasons stated herein, it is hereby ORDERED that Defendant’s Motion for Summary Judgment is ALLOWED as to all Counts.

The policy states in relevant part in the section entitled “Attendance” on page thirty-nine of the Handbook: “[i]f you are unable to give advance notice due to an emergency or illness, speak directly with your Supervisor by calling . . . between 7:00 a.m. - 8:00 a.m. You may also call between 5:00 a.m. - 7:00 a.m. and leave a message on his voice mail. However, you still must talk directly with your Supervisor by 12:00 p.m. that same day... Your absence will be considered a ‘NO CALL/NO SHOW if the above procedures are not followed.”

The Handbook states in relevant part on page forty: “[a] ‘NO CALL/NO SHOW will result in an automatic written warning ... If you are absent for three continuous days without notifying the company your employment will be automatically terminated ...”
The Handbook also states under the caption “Employee Responsibilities and Company Rules” on page forty-four: “[ilnfractions of the company mies in Category C [including failure to call for three (3) days while absent] will lead to suspension subject to termination ... in addition, the first offense of any of the company rules may result in termination and even prosecution if the commission of a crime occurs.”

The policy does provide that a supervisor may excuse employees, absent for more than one day, from their daily reporting requirement. Chase argues that Barry was never excused from the reporting requirement and Barry presents no evidence to the contrary.

There was conflicting testimony as to whether September 28, 1999, was a previously approved day off for Barry. It is irrelevant to the court’s analysis, however, because even assuming that Barry had the day off, Chase contends Barry failed to call Chase the following three consecutive days.