SHEFFIELD PROGRESSIVE, INC. & others[1] vs. KINGSTON TOOL Co., INC., & another.[2]

Worcester. February 19, 1980. — June 19, 1980.

Present: BROWN, DREBEN, & KASS, JJ.

*Fraudulent Conveyance. Uniform Commercial Code, Secured transactions.*

In an action by unsecured creditors of a corporation against two secured
   creditors, allegations that the corporation and secured creditors had
   perpetrated a fraudulent transfer of all the corporate assets to one of
   the defendants by means of a voluntary and private foreclosure sale,
   that the corporation received no consideration other than the extin-
   guishment of its debts to both creditors, that the transfer of all the cor-
   poration's assets including its equity rendered the corporation insol-
   vent and was made with actual intent to hinder, delay, or defraud the
   unsecured creditors, and that the sale of the corporate assets was not
   made in a commercially reasonable manner were sufficient to state
   claims under G. L. c. 109A, §§ 4, 7, the Uniform Fraudulent Convey-
   ance Act, and under c. 106, § 9-507. [49-52]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 12, 1978.

Motions to dismiss were heard by *Beaudreau,* J.

*Steven A. Kressler* for the plaintiffs.

*Joseph W. Allen, III,* for the Worcester County National
Bank.

*Roger J. Brunelle* for Kingston Tool Co., Inc.

DREBEN, J.  This is an appeal by six unsecured creditors of
Worcester Pressed Aluminum Corp. (Worcester) from a
judgment dismissing their action for failure to state a claim

---

[1] Hano Business Forms, Inc., Rome Strip Steel Co., Inc., Techalloy
Co., Inc., Colt Industries Crucible, Inc., and Lindberg Heat Treating
Company.

[2] Worcester County National Bank.

against two secured creditors, Worcester County National Bank (bank) and Kingston Tool Company, Inc. (Kingston). See Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). Although the complaint stated a claim against Worcester and no order was entered on that claim, a Superior Court judge certified that there was no just reason for delay and directed the entry of final judgment for the bank and Kingston.[3] See Mass.R.Civ.P. 54(b), 365 Mass. 755 (1974). We hold that the dismissal with respect to both secured creditors was erroneous.

A motion to dismiss under rule 12(b)(6) should not be allowed unless there is no set of facts which will entitle the plaintiffs to relief, and in ruling on such a motion, all inferences are to be taken in the plaintiffs' favor. *Nader* v. *Citron,* 372 Mass. 96, 98 (1977). *Whitinsville Plaza, Inc.* v. *Kotseas,* 378 Mass. 85, 87 (1979). We summarize the facts stated in the complaint from this perspective.

In 1976, Worcester entered into two security agreements, one with the bank and one with Kingston under which those two secured creditors held security interests in all of the stock of Worcester and in all of its assets. The bank, through its "ownership" of Worcester's stock, appointed the person who was then serving as president of Kingston to the position of chairman of the board of Worcester. In March, 1978, Worcester, the bank and Kingston perpetrated a "fraudulent transfer" of all of Worcester's assets to Kingston by means of a "voluntary" and "private" foreclosure sale. Immediately prior to the transfer, the fair market value of Worcester's assets had been more than $3,000,000. The total debt to the bank and Kingston was $879,159, leaving an equity interest in Worcester in excess of $2,000,000.

---

[3] At oral argument, all parties stated that it would serve no useful purpose for the plaintiffs to pursue any claims against Worcester. Although it would have been tidier for the plaintiffs to have obtained a default judgment against Worcester, this is not a case where there is a viable claim still remaining to be tried, and we will not look behind the judge's certification under rule 54(b). Contrast *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.,* 9 Mass. App. Ct. 250, 252 (1980).

However, Worcester received no consideration other than the extinguishment of its debts to the bank and Kingston, and the transfer to Kingston of all of Worcester's assets including its equity rendered Worcester insolvent. A separate count of the complaint alleged that such transfer was made with "actual intent to hinder, delay or defraud" the creditors of Worcester, and "more specifically the Plaintiffs."

Other counts set forth that the bank did not sell the assets of Worcester to Kingston in a commercially reasonable manner in accord with G. L. c. 106, § 9-504 (inserted by St. 1957, c. 765, § 1), that Kingston did not act in good faith, knew that the sale was not commercially reasonable and did not take free of the debtor's rights under that section. The creditors sought to reach and apply under G. L. c. 214, § 3(6) (as appearing in St. 1973, c. 1114, § 62), Worcester's (debtor's) rights against both the bank and Kingston.

1. *Claims against Kingston.* The allegations are sufficient to state claims against Kingston under the Uniform Fraudulent Conveyance Act, G. L. c. 109A, §§ 4, 7. Section 4[4] of that act provides that a conveyance without fair consideration which renders a person insolvent is fraudulent without regard to intent, and § 7[5] provides that a conveyance made with actual intent to "hinder, delay or defraud" creditors is fraudulent. Kingston argues, however, that in order to be fraudulent under those sections the conveyance has to be made by the debtor, i.e. Worcester, and that here the conveyance was made by the bank and not by Worcester. Assuming, without deciding, that the conveyance has to be made by the debtor, there is an explicit allegation that

---

[4] Section 4 reads: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

[5] Section 7 reads: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Worcester, as well as the bank and Kingston, "did perpetrate a fraudulent transfer of the assets" of Worcester to the other defendants. Moreover, Worcester's "voluntary" foreclosure whereby it released or waived its rights in an equity of more than $2,000,000 is no less a "conveyance" than a transfer by written instrument. G. L. c. 109A, §§ 1, 11.[6] See *Joseph P. Manning Co.* v. *Shinopoulos*, 317 Mass 97, 99 (1944). See also *Buckley* v. *John*, 314 Mass. 719, 726 (1943); G. L. c. 214, § 3(8) (as appearing in St. 1973, c. 1114, § 62). A collusive suffering of judgment or a collusive foreclosure is a fraudulent conveyance which may be attacked by individual creditors. See *Downs* v. *Fuller*, 2 Met. 135, 138 (1840); 1 Glenn, Fraudulent Conveyances § 214(a), at 367-368 (rev. ed. 1940); *Zakheim* v. *Dry Harbor Homes, Inc.*, 245 App. Div. 769, 770 (N.Y. 1935).

Kingston's argument, citing G. L. c. 106, § 9-504(4), that a secured party's sale of a debtor's assets cuts off all potential rights of unsecured creditors in such assets is without merit. Chapter 106, § 1-103 (inserted by St. 1957, c. 765, § 1), which relates to the Uniform Commercial Code (Code) as a whole, provides that "[u]nless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to . . . fraud . . . shall supplement its provisions." As has been said, "Clearly, article 9 does not replace the Uniform Fraudulent Conveyance Act." 1B Coogan, Hogan & Vagts, Secured Transactions under the Uniform Commercial Code § 13.07(1), at 1381 (1980).

Indeed, the creditors' action against Kingston is recognized by the Code. See G. L. c. 106, § 9-504. Kingston as a

---

[6] Section 1 states: "'Conveyance' includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." Section 11 provides: "In any case not provided for in this chapter the rules of law and equity, including the law merchant, and in particular the rules relating to the law of principal and agent, and the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy or other invalidating cause shall govern."

purchaser does not take free of the debtor's rights under that section if, as alleged, it received the transfer in collusion with the bank. Under the Code, these rights of the debtor may be asserted by an unsecured creditor. G. L. c. 106, § 9-311.[7] The comment of the commissioners explains that the purpose of the section is "[t]o make clear that in all security transactions under this Article, the debtor has an interest . . . which he can dispose of and *which his creditors can reach*" (emphasis supplied). Comment 1 to § 9-311 of the Uniform Commercial Code, 3 U.L.A. (Master ed. 1968). See also 1A Coogan, Hogan & Vagts § 8.02(2), at 879 (1980). Comment 2 to § 9-311 makes clear that it is left to the law of each State to determine the method by which creditors can reach the debtor's rights. In Massachusetts, the appropriate procedure for creditors to reach assignable interests of their debtors is a bill to reach and apply under G. L. c. 214, § 3(6),[8] *Bethlehem Fabricators, Inc.* v. *H.D. Watts Co.*, 286 Mass. 556, 567 (1934), and in the case of fraud, the appropriate procedure is provided by c. 214, § 3(8). For these reasons, the action against Kingston should not have been dismissed.

2. *Claims against the bank.* The bank's arguments fare no better. The debtor has the right under G. L. c. 106, § 9-507, to recover against the bank for "any loss caused by a failure to comply" with the requirements of § 9-504 that the disposition of the collateral be made in a "commercially reasonable" manner. As indicated in part 1 *supra*, individual creditors may reach and apply this interest of the debtor. G. L. c. 106, § 9-311. The bank's contention that

---

[7] The relevant portion of section 9-311, inserted by St. 1957, c. 765, § 1, provides: "The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process) . . . ." The provision was amended by St. 1979, c. 512, § 7. The 1979 amendment merely removed the parentheses and did not change the language of the section.

[8] Statute 1973, c. 1114, § 62, which conformed the General Laws to the Massachusetts Rules of Civil Procedure and Appellate Procedure effected minor changes in c. 214, § 3, and renumbered its provisions.

such an action is limited by the Code to a trustee in bankruptcy or other representative of all creditors finds no support in the Code.

In addition to their claim under § 9-507, the creditors also have a claim against the bank for participating in the fraudulent conveyance to Kingston. See *Buckley* v. *John*, 314 Mass. at 727.

Because the complaint states claims against the bank both under the Code and under the Uniform Fraudulent Conveyance Act, we need not determine whether the complaint is sufficient against the bank under any other theory alleged by the plaintiffs. See *Nader* v. *Citron*, 372 Mass. at 105. See also *Tamburello* v. *Monahan*, 321 Mass. 445 (1947).

*Judgment reversed.*