HENRY F. SHAW, JR. vs. IRVING M. SIEGEL & others.[1]

Suffolk.   December 14, 1981. — February 26, 1982.

Present: HALE, C.J., CUTTER, & ROSE, JJ.

*Pleading, Civil,* Amendment, Complaint. *Practice, Civil,* Motion to dismiss.

The judge in a civil action did not abuse his discretion in denying the plaintiff's motion for leave to amend his complaint where, taking into account all aspects of the case, he could reasonably conclude that the plaintiff was guilty of undue delay and a dilatory motive and that the amendment, if allowed, would not cure the defects in the original complaint, which was confusing and obscure.  [263-265]

Although the plaintiff in a civil action was reasonably denied leave to amend his complaint, the judge, in the circumstances, should not have allowed a motion for final judgment without affording the plaintiff a further opportunity to frame an amended or substitute complaint. [265-266]

CIVIL ACTION commenced in the Superior Court Department on October 9, 1979.

Motions to dismiss the action as to certain defendants were heard by *Lynch*, J.

A motion for leave to amend the complaint was denied by *Ford*, J., and judgment was ordered by him.

*James A. Frieden* for the plaintiff.

*Paul R. Schneider* for the defendants.

CUTTER, J.  Shaw, an insurance broker, on October 9, 1979, commenced an action against Brighton Discount Corporation (Brighton) and others to collect premiums allegedly

---

[1] Brighton Discount Corporation, certain of its officers and employees, various taxicab companies, and officers of some of them, an individual attorney (Mr. Irving M. Siegel) for Brighton Discount Corporation, and the partnership of which he is a member (the Siegel firm).

due to Shaw from some or all of twenty-three taxicab companies (the debtor corporations) for automobile insurance for 1977 and 1978. The complaint, in very general, diffuse, confusing terms, made essentially the allegations summarized below.

The individual defendants and others acting with them operated a taxi business in Boston and "to avoid liability for the normal expenses and . . . risks of the taxi business and to defraud their creditors . . . have placed legal ownership of the automobiles and taxi medallions used" in undercapitalized corporations controlled by the individual defendants. Brighton, it is averred, controlled a large number of corporations of two types: (a) corporations whose officers and directors were employees of Brighton, and (b) corporations which purchased medallions and cabs from the first group of corporations. The corporations of the second type all were formed with identical purposes and stock transfer provisions. Mr. Siegel was clerk of each corporation and his law firm (the Siegel firm) represented Brighton. Brighton obtained a very complete security interest in all of each corporation's assets and its shares (in exchange for the advance of funds to that corporation to permit the corporation to buy those assets). The officers of each corporation were required to furnish signed, undated resignations to Mr. Siegel, Brighton, or an associate of theirs to be held for use at the holder's discretion. Two individual defendants made operational decisions for each of these taxi companies. Each debtor corporation, or some of such corporations, obtained automobile insurance in 1977 and 1978 through Shaw's agency which placed the insurance through general agencies. Some of the debtor corporations still owe Shaw for unpaid premiums.

On information and belief, it is asserted that each of the debtor corporations has transferred all its assets to similar corporations to delay creditors and that this was done by the individual defendants, Brighton, and the debtor corporations to hinder Shaw and other creditors from collecting amounts due. Counts are set out (1) for breach of contract,

(2) in quantum meruit, (3) for fraudulent conveyance, (4) for fraud, and (5) for unfair and deceptive practice, see G. L. c. 93A, § 2. In addition to damages, injunctive relief was sought. To the complaint were attached sixteen pages of tables purporting to show transfers of assets among the debtor corporations and other corporations.

Mr. Siegel and the Siegel firm filed motions to dismiss for reasons including that Shaw had failed to make averments of fraud "with particularity" as required by Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974). On January 2, 1980, each of these motions was allowed by a Superior Court judge after hearing. Shaw, however, was "given leave to file, within thirty . . . days a motion for leave to file an amended . . . complaint" against Mr. Siegel and the Siegel firm "setting forth with *extreme particularity* the grounds for . . . relief" (emphasis supplied). The order provided that the motion session judge then would determine whether such a motion should be allowed.

No motion for leave to amend the complaint was filed until August, 1980. In the meantime, Shaw's attorney commenced discovery proceedings by taking a nonparty deposition from Mr. Siegel. This deposition continued over seven months without any attempt by Shaw's attorney to comply with the thirty-day limit set in the order of January 2, 1980, for filing the motion for leave to amend. Perhaps this was in part because of a stipulation by a former attorney for Mr. Siegel and the Siegel firm that Shaw need not file such a motion until seven days after the termination of Mr. Siegel's deposition.

On August 8, 1980, Shaw did file a motion for leave to file an amendment to the complaint (and to bring Mr. Siegel and the individual members of the Siegel firm in as new parties defendant). The proposed amendment purported to make (emphasis supplied) "*added* allegations to the [original c]omplaint concerning specific actions taken by" Mr. Siegel and two of his partners "in the furtherance of the fraudulent conveyances and the conspiracy alleged in the [c]omplaint." The proposed amendment specified in some-

what greater detail the standard provisions required by Brighton for inclusion in the corporate papers of the debtor corporations and their transferees. There were also references to required sample standard forms. Copies of these forms were attached to the proposed amended complaint. There were general allegations that the Siegel firm represented each corporation in purchasing a medallion and in certain other matters; that, until a buyer was found, corporations were used to hold medallions "without disclosing the real owner"; that corporations controlled by Brighton participated in paper transactions which "left the seller corporation without assets"; that when "an individual was found who desired to purchase a medallion, a new corporation was formed which borrowed [f]unds from Brighton" on the prescribed terms; that much of the financing was by credit and other book entries and arrangements; that the "true nature of the transaction was hidden from the [p]olice [c]ommissioner[2] . . . because the public documents reflected [only] that there had been a transfer from one controlled or foreclosed upon [sic] corporation to a new borrower"; and that the Siegel firm members prepared the documents submitted to the police commissioner, acted as attorneys for the seller, the buyer, and Brighton and, in most cases, were the only attorneys involved.

It was alleged also that all foreclosure sales were private sales, and that at foreclosure sales, conducted by the Siegel firm (despite the fact that Mr. Siegel was still clerk of the borrower corporation), Brighton purchased the borrower's medallion for several thousand dollars below the open market price that prevailed in sales in which the Siegel firm had participated. It further was alleged that, if any borrower corporation became in arrears in its payments, Brighton or a partner (other than Mr. Siegel) of the Siegel firm would make demand for the full amount of the original

[2] The police commissioner has general supervision of the transfer of medallions. See statutes collected in the City of Boston Code, St. 14, c. 7, § 169, and Ordinance 14, c. 11, § 324 (1975).

mortgage note (which included the purchase price of the cabs and medallions plus prepaid interest) without any reference to the fact that, on pre-payment, the amount due was to be subject to "a rebate of precomputed interest."

On occasion, corporations in default to Brighton would sell their assets to Brighton. The Siegel firm, it was alleged, would act for both Brighton and the borrower and would arrange a sale to Brighton for a consideration that "deprived other creditors of any equity in the corporation."

The proposed amended complaint then listed specific transactions in which the Siegel firm acted at least as attorney for Brighton and corporations controlled by it as well as for borrower corporations (a) in carrying out the transfers of assets and medallions, and (b) doing all the paperwork in connection with the financing and the foreclosure, to protect Brighton's security interests, in the event of the borrower's default. The proposed amendment avers that the consequence was that no assets of the borrower were left to satisfy other creditors of the borrower corporation of whose claims Mr. Siegel or the Siegel firm knew (and on some occasions on which the Siegel firm was defending the borrower).

When the motion for leave to amend the complaint was heard by another Superior Court judge (the motion judge) on August 8, 1980, the entry on the court docket of the order on that motion was the 896th such entry in this case, which is essentially an action to recover about $45,000 of unpaid insurance premiums. There previously had been filed on July 22, 1980, a motion of Mr. Siegel and the Siegel firm for the entry of final judgment in their favor pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). Shaw had filed on July 17 a motion for additional time to file its amendment and for an order compelling the deposition of another partner of the Siegel firm. On June 13, 1980, the case had been placed upon the October trial list on Shaw's motion, with an order that all discovery be completed by September 15, 1980. In any event, after the hearing, the motion judge, without making any findings, denied the motion for

leave to amend and allowed the motion for final judgment.
Judgment dismissing the complaint against Mr. Siegel and
the Siegel firm was entered on August 12, 1980. Shaw ap-
pealed from these actions of the motion judge, and from the
order of January 2, 1980, dismissing the complaint as against
Mr. Siegel and the Siegel firm.

1. Shaw's motion for leave to amend was a matter ad-
dressed to the discretion of the motion judge. Mass.R.Civ.
P. 15(a), 365 Mass. 761 (1974). *Castellucci* v. *United States
Fid. & Guar. Co.*, 372 Mass. 288, 291-293 (1977). *Consum-
ers Sav. Bank* v. *Coven*, 8 Mass. App. Ct. 594, 598 (1979).
In *Foman* v. *Davis*, 371 U.S. 178, 182 (1962), quoted with
approval in the *Castellucci* case, at 289-290, reasons men-
tioned which might justify the denial of a motion to amend
included "undue delay, bad faith or dilatory motive on the
part of the movant, repeated failure to cure deficiencies by
amendments previously allowed, undue prejudice to the
opposing party by virtue of allowance of the amendment,
futility of amendment, etc." Some of these elements the
motion judge could have found to exist in the present case.
(1) The order of January 2, 1980, gave Shaw thirty days in
which to prepare a motion for leave to amend. For many
months, there was no effort to meet the emphatic provision[3]
in that order that an amended complaint should set forth
"with *extreme* particularity" (emphasis supplied) the grounds
for relief which in this case, in substantial measure, rest on
grounds essentially involving allegations of fraud. See Mass.
R.Civ.P. 9(b), 365 Mass. 751 (1974). See also Smith &
Zobel, Rules Practice §§ 9.2, 9.3, & 9.5, at 249-251 (1974 &
1981 Supp.). By August 8, 1980, granting the amendment
almost certainly would have necessitated a substantial con-
tinuance of the case (on the October, 1980, trial list) to af-
ford Mr. Siegel and the members of the Siegel firm time to

---

[3] In view of that provision, it would have been appropriate for Shaw to
have filed a written motion, assented to by adversary counsel, for court
approval of an extension of time for filing an amendment, rather than to
have relied on the stipulation of former counsel for Mr. Siegel and the
Siegel firm.

examine the discovered material and information already furnished. The motion judge reasonably could conclude that Shaw was guilty of undue delay and a dilatory motive. (2) The serious lack of clarity of the original complaint may well have led the judge who issued the order of January 2, 1980, to insert the requirement that any amendment state the grounds for relief with extreme particularity. The proposed amendment of the complaint, however, left wholly unchanged all the confusing general allegations of the original complaint.[4] Such obscurity of pleading, not perfected even after seven months devoted to Mr. Siegel's deposition, reasonably could be viewed by the motion judge as a deliberate or grossly negligent attempt to confuse amounting to bad faith, and as causing undue prejudice to Mr. Siegel and the members of the Siegel firm by the ambiguity of the allegations. Certainly, there was no sufficient compliance with Mass.R.Civ.P. 8(a), 365 Mass. 749 (1974), requiring that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." That would have remained the situation even if the proposed amendment had become effective.

Neither the original complaint nor the proposed amendment alleges that Mr. Siegel or any members of the Siegel firm had any contact whatsoever with Shaw in placing the insurance, the premiums on which remain unpaid at least to some extent. It is not alleged directly that any representations or acts of these proposed attorney defendants influ-

---

[4] The original complaint made no adequate or understandable differentiation among (a) "individual defendants" as a group and (b) Mr. Siegel and the members of the Siegel firm. The attorneys do not appear to have been charged specifically in the original complaint with having acted otherwise than as attorneys, but the form of the complaint leaves this uncertain. Because, however, the attorneys are in fact individuals, and were named originally as individual defendants, the ambiguous complaint possibly may have charged them with other acts. The general original allegations also may have left it uncertain whether Mr. Siegel and the members of the Siegel firm were alleged to have had any ownership interest in any of the defendant corporations (including Brighton) or to have received any benefit (other than attorneys' fees) from any alleged acts of defendants other than themselves.

enced Shaw in his imprudent placement of orders for auto-
mobile insurance (from numerous small taxicab corpora-
tions) without obtaining advance payment of the premi-
ums. Whatever complaints the individual shareholders of
the borrower corporations may have had against the re-
maining defendants, or even against Mr. Siegel and the
Siegel firm, there are no allegations which state clearly any
basis for holding that the attorneys' conduct gave Shaw
himself grounds for complaint. Even without deciding
finally whether further amendments could allege a basis for
action by Shaw against these attorneys, the motion judge, in
exercising his discretion to deny the motion for leave to
amend, reasonably could take into account the practical
certainty that *this* proposed amendment, if allowed, would
not cure the defects in the original complaint.

In the *Castellucci* case, 372 Mass. at 292, it was said that,
"a judge may give weight to the public interest in the effi-
cient operation of the trial list and to the interests of other
parties who are ready for trial." Trial in the present case
may not have been as imminent as in the *Castellucci* case,
but Shaw himself was responsible for the case being on the
trial list, and the motion judge was entitled to take into ac-
count all aspects of the case (and its swollen volume of dock-
et entries) in passing on the motion for leave to amend. See
*Mercantile Trust Co. Natl. Assn.* v. *Inland Marine Prod.
Corp.*, 542 F.2d 1010, 1012-1013 (8th Cir. 1976); *Johnston*
v. *Holiday Inns, Inc.*, 595 F.2d 890, 896 (1st Cir. 1979).
Despite the strong policy of the new rules of civil procedure
in favor of liberal amendment, for all the reasons suggested
above we conclude that the motion judge did not abuse his
discretion in denying leave to amend the complaint by the
then proposed amendment.

2. The motion judge made no findings in granting the
motion to dismiss under rule 54(b). We thus do not know
precisely the grounds upon which he granted final judg-
ment. We do not pause to consider whether the judgment
in fact issued complied with all the requirements of rule
54(b), including "an express determination that there is no

just reason for delay." We are of opinion (despite our holding that Shaw was reasonably denied leave to amend) that the motion judge should not have granted the motion for final judgment for Mr. Siegel and the Siegel firm without allowing Shaw one further opportunity to frame an amended or substitute complaint. The history of Shaw's delay in producing a satisfactory amendment is not so long or so clear as to require final dismissal without further chance to effect (a) removal of the serious ambiguities which pervade the original complaint, and (b) a more precise and fair statement of the particular respects in which the attorneys are alleged to have participated to Shaw's detriment in the activities of the other defendants. After such a further effort to amend, there may remain a statement of one or more claims which not only (1) will comply with the specific requirements of particularity in rule 9(b) and with rule 8(a), but also (2) will be adequate to withstand a motion to dismiss under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). Accordingly, the judgment under rule 54(b) is to be vacated so that within thirty days after the receipt in the Superior Court of the rescript from this court (a time limit which should be respected except for substantial cause shown), Shaw may seek leave to file an amended or substitute complaint. See *Nader* v. *Citron*, 372 Mass. 96, 104 (1977); *Whitinsville Plaza, Inc.* v. *Kotseas*, 378 Mass. 85, 100-101 (1979); *Sheffield Progressive, Inc.* v. *Kingston Tool Co.*, 10 Mass. App. Ct. 47, 48-56 (1980). Compare *Bass River Lobsters, Inc.* v. *Smith*, 7 Mass. App. Ct. 197, 198-202 (1979).

3. We do not now reach any issue concerning the propriety of the conduct of Mr. Siegel and the Siegel firm as attorneys, or concerning their formulation of the security arrangements for the protection of Brighton as a lender, or the propriety of those arrangements, or whether the general structure of those arrangements was in any respect contrary to the public interest or unconscionable. This decision is confined strictly to the procedural matters here discussed.

4. The order of January 2, 1980, and the order of August 8, 1980, refusing leave to amend the complaint as then pro-

posed, are affirmed. The final judgment dismissing Shaw's claims against Mr. Siegel and the members of the Siegel firm is vacated, and the case is remanded to the Superior Court for further proceedings consistent with this opinion. Mr. Siegel and the Siegel firm are to have costs of this appeal.

*So ordered.*