KEVIN N. FLYNN & another[1] *vs.* CITY OF BOSTON & another.[2]

No. 01-P-542.

Suffolk. November 22, 2002. - October 6, 2003.

Present: GELINAS, COWIN, & McHUGH, JJ.

*Practice, Civil,* Summary judgment. *Employment,* Termination. *Public Employment,* Termination. *Contract,* Employment. *Public Policy. Estoppel.*

The termination of at-will employees of a municipal community service agency as retaliation for refusing to "render political service" by opposing political appointments and by objecting to, and reporting, other activity that the employees claimed had political connotation, in derogation of G. L. c. 55, § 16, did not violate public policy, where the statute's public policy implications did not clearly extend to the employees in this particular situation. [492-495]

This court declined to consider, and deemed waived, the claim by employees of a municipal agency that they were terminated from employment in violation of the Massachusetts whistle blowing statute, G. L. c. 149, § 185, where neither the employees' prior suit in Federal court, nor their complaint in the Superior Court, contained a claim for wrongful termination pursuant to the statute [495]; further, the court declined to consider the employees' contention that their termination was a breach of the implied covenant of good faith and fair dealing, where the claim was raised for the first time on appeal, and where the employees' failure to raise the issue during seven years of litigation estopped them from making the argument [495-496].

CIVIL ACTION commenced in the Superior Court Department on August 31, 1999.

The case was heard by *Linda E. Giles,* J., on a motion for summary judgment.

*Mark S. Bourbeau* for the plaintiffs.

*Eve A. Piemonte Stacey,* Assistant Corporation Counsel, for the defendants.

GELINAS, J. Kevin Flynn and Randy Wolfson brought this ac-

[1]Randy Wolfson.
[2]Evelyn Riesenberg.

tion against the city of Boston (city) and Evelyn Riesenberg for wrongful termination, in violation of an alleged public policy established by G. L. c. 55, § 16. A judge in the Superior Court granted summary judgment for the defendants, and the plaintiffs appeal. We affirm.

We summarize the facts taken from the summary judgment materials, considered in the light most favorable to the plaintiffs, who are the nonmoving parties. *Parent* v. *Stone & Webster Engineering Corp.*, 408 Mass. 108, 113 (1990). Both Flynn and Wolfson were senior, at-will employees of the central office of Boston Community Centers (BCC), a city of Boston agency, with some 400 employees, responsible for delivering community services, such as child care, youth work, and senior citizen programs, and administering grants both from city funds and from other sources. Flynn served as associate director of administration and finance, and Wolfson was one of two associate directors of its field operations. Both reported directly to Riesenberg, the executive director of BCC, appointed by the newly elected mayor of Boston in January of 1994. On July 26, 1994, Riesenberg informed Flynn and Wolfson that their employment with BCC was terminated. As a reason, she told them that they, along with two other associate directors, were being terminated as part of a restructuring of BCC's management.[3] Flynn and Wolfson claim that their employment was terminated not because of a restructuring of management, but because of political considerations and criticism of Riesenberg's management decisions. Wolfson claims that Riesenberg pressured her to tell which of the mayoral candidates the BCC staff had supported in the recent mayoralty election. Wolfson told Riesenberg that she was uncomfortable with the question. Flynn claimed that Riesenberg asked him to tell her how to fire all of the staff and replace them with Riesenberg's or the mayor's people. As evidence of the politicized nature of their being fired, both Wolfson and Flynn point to the fact that Riesenberg hired Charles Clabaugh, a precinct captain for the prevailing candidate during the campaign, as her special as-

---

[3]Although not the predicate of our decision, the record seems to support this contention: the other two associate directors who were terminated had been strong supporters of the newly elected mayor.

sistant, without posting the position or asking for a résumé or employment application. Wolfson and Flynn regarded this as a political appointment, and told Riesenberg of their opposition to the appointment.

Wolfson and Flynn then claimed that Riesenberg and Clabaugh pressured them, and other BCC staff, to hire a person because of his political connections, whom they believed was unqualified, for an important street worker position. When this employee proved incapable of performing the job, Riesenberg ordered a second person to be hired, over Flynn's and Wolfson's stated objection that employing a second person would violate the terms of the Federal grant that funded the position. Flynn and Wolfson presented similar evidence regarding the hiring, for political reasons, of a nonqualified community center athletic director. Flynn and Wolfson objected here as well, and Riesenberg overruled them. Flynn also claims that Riesenberg ordered him to process a pay raise for a union employee in violation of the union contract with the city. Flynn protested the pay raise. Finally, Wolfson and Flynn alleged that Riesenberg failed to properly handle claims of sexual harassment, and that when they, Flynn and Wolfson, objected, they were removed from any involvement with the claims.

After termination, Flynn and Wolfson brought suit in the United States District Court, under 42 U.S.C. § 1983, for wrongful termination in violation of their rights to free speech and association under the First Amendment to the United States Constitution. The Federal suit also contained claims under the Massachusetts civil rights act, G. L. c. 12, § 11I, and wrongful termination in violation of the Massachusetts campaign finance law, G. L. c. 55, § 16. The Federal District Court granted summary judgment against the plaintiffs on all claims and dismissed their complaint. On appeal to the First Circuit Court of Appeals, summary judgment was upheld as to the Federal claims, but vacated with respect to the State claims, with instructions to the District Court to dismiss them without prejudice, so that they might be re-filed in State court. See *Flynn* v. *Boston,* 140 F.3d 42, 48 (1st Cir.), cert. denied, 525 U.S. 961 (1998). This suit followed.

We follow the well-established rules governing summary

judgment motions. Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). *Highlands Ins. Co.* v. *Aerovox Inc.*, 424 Mass. 226, 232 (1997).

It is uncontroverted that Flynn and Wolfson were employees at will. As such, their employment was subject to being "terminated at any time for any reason or for no reason at all." *Upton* v. *JWP Businessland*, 425 Mass. 756, 757 (1997) (citations omitted). See *GTE Products Corp.* v. *Stewart*, 421 Mass. 22, 26 (1995), citing *Jackson* v. *Action for Boston Community Dev., Inc.*, 403 Mass. 8, 9 (1988). The rule is not absolute. Liability may be imposed upon an employer if the employer terminates an at-will employee for a reason that violates clearly established public policy. *Upton, supra* at 757. See *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 810 (1991). In order for Flynn and Wolfson to prevail, therefore, they must establish that there was a question of fact whether their termination as employees at will was in violation of some well-established public policy.

Our courts have consistently interpreted any public policy exception to the rule in a very narrow sense. *Smith-Pfeffer* v. *Superintendent of the Water E. Fernald State Sch.*, 404 Mass. 145, 150 (1989) (to do otherwise would convert the general rule "into a rule that requires just cause to terminate an at-will employee"). See *King* v. *Driscoll*, 418 Mass. 576, 582 (1994). We have found public policy exceptions making redress available to employees at will who have been terminated in a variety of instances: for asserting a legal right, for doing what the law requires, or for refusing to disobey the law. See *Upton, supra* at 757, and cases cited therein.

The existence of a clearly defined public policy is a question of law for the court. *Wright* v. *Shriners Hosp. for Crippled Children*, 412 Mass. 469, 472 (1992). It is for the judge, not the jury, to "determine whether, on the evidence, there is a basis for finding that a well-defined, important public policy has been violated." *Mello* v. *Stop & Shop Cos.*, 402 Mass. 555, 561 n.7 (1988). See *Smith-Pfeffer, supra* at 151; *Mistishen* v. *Falcone Piano Co.*, 36 Mass. App. Ct. 243, 244-245 (1994). If the court

finds that there is a well-defined, important public policy, then "the judge must advise the jury what that public policy is and that, if they find that the employer discharged the employee for particular conduct that is protected by that public policy, they would be warranted in returning a verdict for the employee." *Mello, supra* at 561 n.7.

General Laws c. 55, § 16, as amended by St. 1975, c. 151, § 16, states:

> "No person in the public service shall, for that reason, be under obligation to contribute to any political fund, or to render any political service, and shall not be removed or otherwise prejudiced for refusing to do so."

> "Violation of any provision of this section shall be punished by a fine of not less than one hundred nor more than one thousand dollars."

The plaintiffs argue that the statute provides the basis for a "well-defined" public policy extending to the types of activities that they allege were the basis for termination of their employment, and that there remained only the question of whether those activities constituted reason for the termination. Thus, plaintiffs argue summary judgment was inappropriate.

Section 16 of the statute specifically prohibits public employers from requiring their employees to "render political service" and from retaliating against employees who refuse to render such service. In sum, Wolfson and Flynn claim that Riesenberg terminated them for failing to "render political service," by opposing political appointments, and by objecting to, and reporting, other activity that they claim had political connotation. In her closely reasoned memorandum of decision, the motion judge determined that, while the Legislature intended to establish a clear public policy governing political contributions and service in political campaigns, the broader scope and extent of that policy, especially with respect to "render[ing] political service," is unclear, and that the phrase "render political service" is, when considered away from direct work in political campaigns, imprecise and ambiguous. We agree.

To adopt the broad interpretation of the statute proposed by Flynn and Wolfson would extend the reach of the statute to any

individual who was an elected public official, or to an individual in the public sector who happened to be connected in some way to an elected public official. The word "service" would extend to indirectly assisting, in a political sense, or conferring a political benefit upon any such person as opposed to direct action or work for a political candidate. Were we to adopt that definition almost any order or directive given by a public sector superior to a subordinate that might in any way prove helpful to the superior, or to one who had been a political candidate, could be construed as demanding "political service" of the employee. Such a sweeping interpretation of the statute would open the floodgates of litigation, permitting any employee working in public service to bring a claim not only for wrongful employment termination, but also alleging violation of the statute from nearly any directive given by his or her superior that might possibly be construed as resulting in some political benefit. Such a construction of the statute would result in the inability of management to properly govern their areas of responsibility. The statute is one that deals with campaign finance and establishes a clearly enunciated public policy of preventing candidates for political office from requiring public employees to donate to, or to work in, political campaigns. We do not establish the strict contours of the legislative meaning. We hold only that the statute's public policy implications do not clearly extend to the plaintiffs in this situation.

At the summary judgment hearing, and again in this court, Flynn and Wolfson argue that, because their internal protests to Riesenberg, and to the audit department, amounted to "whistle blowing," their termination violated the Massachusetts whistle blowing statute, G. L. c. 149, § 185. Neither their suit in Federal court, nor their complaint in the Superior Court, contained a claim for wrongful termination pursuant to this statute. The Superior Court judge properly found that Flynn and Wolfson had raised this claim too late. See *Mathis* v. *Massachusetts Elec. Co.*, 409 Mass. 256, 264-265 (1991) (court has discretion to deny motion to amend pleadings when there is good reason, such as undue delay and futility of amendment). We decline to consider this issue on appeal and deem it waived.

For the first time on appeal, Flynn and Wolfson also argue

that their termination was a breach of the implied covenant of good faith and fair dealing. We agree with the defendants that this claim was not before the Superior Court at the time of the summary judgment hearing. We need not consider on appeal issues not presented at the trial level, *Royal Indemnity Co.* v. *Blakely*, 372 Mass. 86, 87-88 (1977); further, the plaintiffs' failure to raise the issue during seven years of litigation both in the Federal courts and in this court results in their being estopped from making this argument under rules of claim preclusion. See *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc.*, 387 Mass. 444, 450 (1982) ("if a set of facts gives rise to a claim based on both State and Federal law, and the plaintiff brings the action in a Federal court which had 'pendent' jurisdiction to hear the State claim but the plaintiff declines to assert such State claim, he may not subsequently assert the State ground in a State court action").

*Judgment affirmed.*