Garsh, J.
The plaintiff, Sally Terespolsky, has brought a claim under G.L.c. 151B, §4 alleging that she was terminated by her employer because she was pregnant.[1] The suit was brought against her employer, the Law Offices of Stephanie K. Meilman, P.C., and Stephanie K. Meilman individually.
This matter is now before the court on the defendants’ motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for summary judgment on the grounds that the Law Offices of Stephanie K. Meilman, P.C. was not an “employer” as that term is defined in chapter 151B. In connection with their motion, the defendants also filed a motion to strike the late-filed opposition, and the plaintiff has sought to amend her complaint to add two common-law claims. For the following reasons, the defendants’ motion to strike is denied; the defendants’ motion for summary judgment is allowed; and the plaintiffs motion to amend is denied.
BACKGROUND
The following facts are not contested.
The plaintiff, Sally Terespolsky (“Terespolsky”), was employed by the defendant, the Law Offices of Stephanie K. Meilman, P.C. (“Meilman P.C.”), as a secretary from May 2000 until September 18, 2002. The defendant Stephanie K. Meilman (“Meilman”), an attorney, managed Meilman P.C. at all relevant times. Throughout Terespolsky’s employ, Meilman was the President, Clerk, Treasurer and sole Director of Meilman, P.C.; Meilman also was the owner and sole shareholder of Meilman, P.C., a closely held professional corporation.
On September 6, 2002, Terespolsky informed the defendants that she suspected that she was pregnant.
On or about September 18, 2002, Terespolsky was discharged from Meilman P.C.’s employ.
During the twelve-day period between Terespolsky’s notice of possible pregnancy and her discharge, Meilman P.C. employed five employees: Meilman, Terespolsky, Nelson Costa, Marshal Grant, and Olga Freger (“Freger”). Two independent contractors also performed services for Meilman P.C. during this period of time.
For some period of time prior to September 6, 2002, Maiy Montuori (“Montuori”) was in Meilman P.C.’s employ. She worked principally as a secretary for Eric Brenman (“Brenman”).[2] It is disputed whether Montouri worked for Meilman, P.C. from November 2001 to July or August of 2002 or whether she ceased her employment as of the pay period ending April 30,
2002. The dispute is not material because Freger was hired only after Montouri left.
Brenman, an attorney, operated a law practice out of Meilman, P.C. for over ten years. Whether he was an employee of Meilman, P.C. is disputed. There is also a dispute as to whether Brenman left at the end of April 2002 or in July or August of 2002.
DISCUSSION
Motion to Strike
On November 3, 2003, the defendants’ motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for summary judgment was served upon the plaintiff.[3] Pursuant to Superior Court Rule 9A(b)(2), the deadline for service of any opposition to the defendants’ motion was November 28, 2003. The defendants received no opposition. They filed their motion with this court on December 12, 2003, along with a Rule 9A certification truthfully indicating that no opposition had been received. The court (Muse, J.) determined that a hearing would be helpful to the disposition of the motion. On December 18, 2003, notice was sent to the parties by the court that a hearing was to be held on Monday, February 2, 2004. Still no opposition was forthcoming. On the afternoon of January 29, 2004, without any explanation or leave of court, the plaintiff served and filed a Memorandum in Opposition, a Statement of Additional Material Facts in Support of Her Contention that There is a Genuine Issue to be Tried, the Affidavit of Sally Terespolsky and the Affidavit of Mary Montuori (collectively referred to herein as the “Opposition Materials”). Both affidavits were dated November 13, 2003.
In light of counsel’s wholly unexcused, cavalier disregard of judicially imposed reasonable time constraints, the defendants moved to strike the Opposition Materials as “immaterial, impertinent, or scandalous” pursuant to Mass.R.Civ.P. 12(f) and as untimely pursuant to Superior Court Rule 9A(b)(2). In support of their motion, the defendants argued that they “d[id] not have sufficient time to address the Plaintiffs Opposition Materials.”
*319 Rule 12(f) is not applicable. By its terms, it applies only to “immaterial, impertinent, or scandalous matter” that is contained in a “pleading.”[4] The word “pleading” encompasses the complaint, answer, reply to a counterclaim, answer to a cross claim, a third-party complaint, and a third-party answer. Mass.R.Civ.P. 7(a). “No other pleading shall be allowed . . .” Id. See also Kolakowski v. Finney, 393 Mass. 336, 340 (1984). The Opposition Materials are not pleadings. Moreover, while the conduct of plaintiffs counsel undoubtedly was impertinent, the Opposition Materials themselves contained no “immaterial, impertinent, or scandalous matter.”
While this court does not condone the flagrant disregard of Superior Court Rule 9A(a)(2), in the exercise of my discretion, I choose not to disregard the Opposition Materials because of the failure to comply with that rule. In an impressive tour de force, on January 30, 2003, one day after the plaintiff filed her Opposition Materials, the defendants filed a twelve-page reply memorandum and three affidavits. The reply memorandum, which analyzes several out-of-state cases and points out that a case on which the plaintiff had relied had been overruled, analyzes in depth all the contentions made in the Opposition Materials. At the hearing, counsel for the defendants demonstrated that she was fully prepared to address all the arguments made in the Opposition Materials. The defendants did not seek leave to file any post-hearing memorandum. The defendants have not been prejudiced by the plaintiffs inexcusable neglect.
Motion for Summary Judgment
Chapter 151B makes it an unlawful practice “(flor an employer” to discharge an individual from employment because of the sex of such individual. G.L.c. 151B, §4. Any classification which relies on pregnancy as the determinative criterion is a distinction based on “sex” within the meaning of the statute. Massachusetts Electric Co. v. Massachusetts Commission Against Discrimination, 375 Mass. 160, 161 (1978). Chapter 151B defines the statutory term “employer” as not encompassing a corporation with fewer than six employees. G.L.c. 151B, §1(5).[5] Public employers are included regardless of the number of people employed. Id. Accordingly, the prohibition contained in section four does not apply to a corporate employer with fewer than six employees.
It is undisputed that Meilman P.C. had fewer than six employees on the date that Terespolsky revealed that she might be pregnant and on all subsequent days up to and including the date on which she was discharged.[6] If that is the controlling time frame, the defendants are entitled to summary judgment. Terespolsky argues that an entity is an employer if it employed a total of six or more persons during most of the period of the plaintiffs employment, regardless of whether six or more persons were employed on any one day or during any one pay period when the discriminatory conduct took place. If that test were to govern, the defendants would not be entitled to summary judgment because the record, viewed in the light most favorable to the plaintiff, would support the conclusion that Meilman P.C. had six employees during most of the time that Terespolsky was employed there.
Chapter 15 IB does not specify a time period during which an employing entity must employ six or more persons in order for such entity to be an “employer.” The most natural, common-sense reading of the statute points to the relevant time frame being when the acts giving rise to the alleged unlawful discriminatory practice were committed. Whether it would have violated chapter 151B to have discharged the plaintiff a month or more earlier on the basis of her sex should not control if, on the date of the termination, it did not violate chapter 151B to do so. To interpret the statutory definition of “employer” as requiring an analysis of the number of employees during the entire period of a plaintiffs employ would require the court to engage in rewriting the statute. Cf. Williamson v. Greene, 490 S.E.2d 23, 29 (W.Va. 1997) (as a matter of grammar and logic, to be an “employer” under the West Virginia Human Rights Act, a person must have been employing twelve or more persons at the time that the acts giving rise to the alleged unlawful discriminatory practice were committed).[7] Unlike chapter 151B, Title VII defines an “employer” as “a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ...” 42 U.S.C. §2000e(b). See Turley v. Security Integration, Inc., 2001 WL 1772023 (Mass. Super. Dec. 10, 2001) (Borenstein, J.) (applying the“static requirement of six employees” contained in the definition of “employer” found in chapter 15 IB “in contrast to Title VII, which defines an ‘employer’ more flexibly,” the court looked to the number of employees during the time when the plaintiff allegedly was constructively terminated).
The plaintiff argues that focusing on the date of discharge would give a small employer at the cusp of employing six persons an incentive to discharge an employee in order to reduce its work force to five employees, discriminate against an employee, and later, “when the coast was clear,” increase its work force back to six employees. Even if the relevant time frame in a discharge case should be measured from the date upon which the decision to discharge was made or the motive to discharge arose, that test would not save Terespolsky’s claim. It is undisputed that from the date upon which the plaintiff informed her employer that she might be pregnant until the date of her discharge, there were only five employees. The record is devoid of any conceivable temporal nexus between the reduction in staff and the alleged discrimination. Accordingly, applying the definition of the *320 “employer” in the statute to bar the cause of action asserted by the plaintiff under chapter 151B would not “create any unholy incentives.” Meilman P.C. is entitled to summary judgment on chapter 15IB because it did not meet the six-employee threshold required for the application of that statute.
Meilman also is entitled to summary judgment on the chapter 151B claim brought against her. Chapter 151B, §4(5) provides that it is unlawful “for any person ... to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so.” Meilman may not be held liable under c. 151B, §4(5) for aiding, abetting, or compelling an act forbidden by chapter 151B if Meilman P.C. was not an “employer” within the meaning of chapter 151B, and the plaintiff does not contend otherwise.
Motion to Amend
No paper denominated as a “motion to amend” has been filed by the plaintiff. Nevertheless, her memorandum in opposition to the defendants’ motion for summary judgment argues that if the court disagrees with her construction of c. 151B, “plaintiff should be allowed to pursue common-law claims for discharge in violation of public policy and/or tortious interference with employment.” Both parties addressed whether such claims are futile. In the interest of judicial efficiency, the court deems the plaintiffs memorandum to be a motion brought under Mass.R.Civ.P. 15(a) seeking leave of court to amend the complaint to add common-law claims.
In addition to pointing out the plaintiffs obvious procedural failure to have filed a motion in conformity with Superior Court Rule 9A, the defendants argue that permission to amend should be denied because of undue delay, dilatory motive on the part of the plaintiff, and undue prejudice to the defendants.[8] In the exercise of my discretion, I decline to deny the request to amend on those grounds. Although the deadline under the tracking order for amendment of the pleadings — August 2, 2003 — has passed, no trial has been scheduled. In fact, at the request of the defendants, discovery in this action was stayed. Motions to amend are to be freely allowed. Castellucci v. U.S. Fidelity & Guaranty Co., 372 Mass. 288, 289 (1977) (“a motion to amend should be allowed unless some good reason appears for denying it”). The plaintiff simply wishes to change the theory of relief. The statute of limitations has not expired on the common-law tort claims that the plaintiff wishes to add. There is no undue prejudice to the defendants in permitting the theory of relief to change at this time. There has been no showing that had the common-law claims been brought earlier, the defendants’ strategy would have been different.
Finally, the defendants argue that leave to amend should be denied because adding the common-law claims of discharge in violation of public policy and tortious interference with contractual relations would be futile. The futility of a proposed amendment is a grounds for denying a motion to amend. Id. at 290. A judge properly may deny a motion to amend on the basis of futility if the complaint as amended would fail to state a claim on which relief could be granted. Jessie v. Boynton, 372 Mass. 293, 295 (1977).
The defendants contend that the common-law claim of discharge in violation of public policy must be rejected as futile because, assuming plaintiffs allegations to be true, no clearly established, clearly expressed, well-defined, or particular public policy was violated. An employer is liable for terminating an at-will employee for a reason that violates clearly defined public policy. Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472 (1992); Flynn v. Boston, 59 Mass.App.Ct. 490, 493 (2003). Whether a clearly defined public policy exists is a question of law for the court. Id. The cause of action is not an invitation to judges to create an avenue of redress for any discharge that may be motivated by socially undesirable reasons because to do so would eviscerate the general rule that just cause is not required to terminate an at-will employee. King v. Driscoll 418 Mass. 576, 582 (1994). “Our courts have consistently interpreted any public policy exception to the rule in a very narrow sense . . . We have found public policy exceptions making redress available to employees at will who have been terminated in a variety of instances: for asserting a legal right, for doing what the law requires, or for refusing to disobey the law.” Flynn, 59 Mass.App.Ct. at 493. Terespolsky has not shown how she could prove that the conduct giving rise to her discharge was statutorily protected, such as filing a workers’ compensation claim, or that it was mandated, such as serving on a jury. She does not claim that she was fired for refusing to disobey the law, such as committing perjury, nor that she was discharged in retaliation for cooperation with a law enforcement investigation. See generally Wright, 412 Mass, at 472-73; Smith-Pfeffer v. Superintendent of the Walter E. Fernald State School 404 Mass. 145, 149-50 (1989).
In support of her claim that an employee being discharged because of pregnancy violates public policy, Terespolsky relies solely on the public policy articulated in chapter 151B. She argues that, in enacting chapter 151B, the Legislature recognized and declared a public policy against gender discrimination in employment practices, including termination of employment on the basis of pregnancy. In effect, the plaintiff would extend the public policy exception to the at-will doctrine to cover discharges of employees without just cause whenever chapter 151B would have prohibited such discharges had the employees worked for employers with six or more employees.
The public policy exception to the at-will employment rule is not that broad.[9] Chapter 151B does not provide a remedy for pregnancy-related discharges against an employer with fewer than six employees
*321 and, equally important, the definition of “employer” acts as a limitation on the prohibition against discriminatory discharges. Chapter 151B therefore cannot be the source for a clearly defined public policy that would be vindicated by allowing this action to proceed. In fact, that statute reflects an unambiguous public policy determination by the Legislature that employers with fewer than six employees should not be subject to lawsuits for pregnancy-related discrimination. The legislative intent to create that public policy is reinforced by the Maternity Leave Statute, G.L.c. 149, §105D, which grants an employee, who is absent for not more than two months for the purpose of giving birth and who has given at least two weeks notice to her “employer” of her anticipated date of departure and intent to return, the right to be restored to her previous or a similar position with the same status and pay as of the date of her leave. “For the purposes of this section, an ‘employer’ shall be defined as in subsection 5 of section one of chapter one hundred and fifty-one B.” G.L.c. 149, §105D. A common-law remedy for the pregnancy-related discharge of an employee on the grounds of public policy by an employer of fewer than six employees would subvert legislatively determined public policy. “To conclude otherwise would require [the court] to turn a blind eye to the legislative policy decision reflected in the statutoiy exemption for small employers and to the reasons underlying that decision.” Thibodeau v. Design Group One Architects, LLC, 802 A.2d 731, 740 (Conn. 2002) (holding that at-will employee terminated because of her pregnancy failed to state a legally cognizable claim for wrongful discharge in violation of public policy because the statutoiy definition of employer in the state’s anti-discrimination act reflects a considered legislative judgment that it is the public policy of the state to shield small employers from having to bear the costs of litigating sex discrimination claims regardless of their merit).[10] See also Chavez v. Sievers, 43 P.3d 1022, 1026 (Nev. 2002) (declining to create an exception to the at-will doctrine for alleged racial discrimination where the state legislature had determined that small businesses should not be subject to racial discrimination suits); Burton v. Exam Center Industrial & General Medical Clinic, Inc., 994 P.2d 1261, 1265 (Utah 2000) (deciding that no public policy existed justifying the creation of a common-law cause of action for firing an employee due to his age when the employer had too few employees to come within the scope of the state’s anti-discrimination statute because the court was not persuaded that the statute “declares a public policy which is ‘clear and substantial’ with respect to small employers”); Brown v. Ford, 905 P.2d 223, 229 (Okla. 1995) (holding that where an employer engages in sexual harassment outside the purview of the state’s anti-discrimination act, a common-law claim would not be actionable as a discharge in breach of public policy). But see Williamson v. Greene, 490 S.E.2d at 32-33 (holding that at-will employee unable to bring suit under the state’s Human Rights Act in view of the exemption for small employers may maintain a common-law claim for retaliatory discharge based on sex discrimination or sexual * harassment because that act establishes a clear and unequivocal public policy against sex discrimination and sexual harassment in employment and provides specific guidance to reasonable nonstatutoiy employers).
In addition to relying on a case which the plaintiff failed to point out was overruled,[11] Terespolsky relies on decisions construing statutoiy language veiy different from chapter 151B. For example, in Molesworth v. Brandon, 672 A.2d 608, 611-16 (Md. 1996), the court held that a common-law cause of action for wrongful discharge of an at-will employee based on sex discrimination lies against an employer with too few employees to come under Maryland’s Fair Employment Practices Act because that statute expressly announced a broad public policy prohibiting discrimination in employment and the statutoiy definition of the term “employer” in the exemption provision of the act did not apply to the separate provision of the act declaring it to be the policy of the state to prohibit discrimination in employment by “any employer.” By contrast, the Legislature determined that the definition of “employer” contained in c. 151B, §1(5) should apply wherever that term is used “in this chapter.” The chapter includes section four, which makes it unlawful for “an employer” to discharge an employee because of the sex of the employee. G.L.c. 151B, §4. Similarly, in Roberts v. Dudley, 993 P.2d 901, 906 (Wash. 2000), the court recognized a common-law cause of action in tort for wrongful discharge of an employee in violation of public policy based upon a statute which declared that “no person shall be . . . excluded from any premises or place or work or employment on account of sex”; that statute provided no remedy and contained no exemption for small employers. The court in Roberts also relied upon a state anti-discrimination act that declared it to be a civil right “to hold employment without discrimination.” Id. at 907. The court found that nothing in that section of the act “suggests small employers are exempt ... to the contrary, [the provision] sets forth a policy that discrimination against any citizens should be eradicated.” Id.[12]
Terespolsky fares no better with her request to amend her complaint to add a common-law count for tortious interference with her at-will employment contract even though Chapter 15 IB does not bar bringing such a claim. See Comey v. Hill, 387 Mass. 11, 20 (1982) (holding that c. 151B did not repeal pre-existing common-law tort for interference with advantageous relations). In order to maintain an action for intentional interference with contractual relations, Terespolsky must be able to prove, among other elements, that she had a contract with a third parly. Wright, 412 Mass. *322 at 476. Meilman P.C., the entity for whom she worked, is not a third party that could be found liable for the claimed interference with the employment relationship between itself and Terespolsky, its employee. Appley v. Locke, 396 Mass. 540, 543 (1986). Where, as here, the undisputed facts demonstrate that Meilman, P.C., a closely held professional corporation, is indistinguishable from Meilman — its President, Clerk, Treasurer, sole director, owner and sole shareholder — Meilman, who maintained control over all aspects of the operation of Meilman, P.C., also cannot be sued for interference. See Harrison, v. NetCentric Corp., 433 Mass. 465, 478 (2001) (“Where the corporation and the individual defendant are indistinguishable, including without limitation, where the individual is the corporation’s sole stockholder, it would exalt form over substance to hold that the corporation could not be sued successfully in contract, but that the corporation’s alter ego could be sued successfully in tort”).
ORDER
For the reasons set forth above, it is hereby ORDERED that the defendants’ motion to strike be and hereby is DENIED, that the defendants’ motion for summary judgment dismissing the chapter 15 IB claim be and hereby is ALLOWED, and that the plaintiffs motion to amend to add common-law claims be and hereby is DENIED.

The plaintiff also brought a claim under G.L.c. 93, §102. That claim was dismissed by this court (Houston, J.) on the grounds that the Massachusetts Equal Rights Act does not govern post-hiring discrimination by an employer.

Throughout Brenman’s tenure at Meilman P.C. while Terespolsky was also employed there, Brenman had a secretary.

The plaintiff could not have been surprised by the legal argument because, in May of2003, the defendants had moved to dismiss the c. 151B count, pursuant to Mass.R.Civ.P. 12(b)(6), on the same grounds. That motion was denied because the court (Houston, J.) ruled that whether the defendants employed fewer employees than the statutory minimum could not be determined from an analysis of the pleadings and, therefore, the issue was more appropriately resolved by way of a motion for summary judgment.

Rule 12(f) provides that “[u]pon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court’s own initiative at any time, the court may after hearing order stricken from any pleading any insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter.”

G.L.c. 151B, §1(5) provides: “As used in this chapter . . . [t]he term ‘employer’ does not include a club . . . nor does it include any employer with fewer than six persons in his employ, but shall include the commonwealth and all political subdivisions, boards, departments and commissioners thereof.”

Terespolsky does not argue, nor could she, that the independent contractors performing services for Meilman P.C. were “employees” within the meaning of c. 151B, §1(5). See Comey v. Hill, 387 Mass. 11, 15 (1982) (“we do not read [G.L.c. 151B) as intending to broaden the definition of employee to include an independent contractor”).

The West Virginian statute provided that “[t]he term ‘employer’ means . . . any person employing twelve or more persons within the state . . .” W. Va. Code 5-11-3(d) [1994],

Defendants rely on Berman v. Alexander, 57 Mass.App.Ct. 181, 191 (2003), and Shaw v. Siegel, 13 Mass.App.Ct. 258, 263 (1982), in support of their argument that the attempted amendment must be rejected. The facts here are quite different. In Berman, the Court ruled that the trial judge had acted within his discretion in denying a motion, made a month before trial, to add a claim under G.L.c. 93A, §11, where the trial judge had ruled not only that the claim had been brought very late, but that it “would have changed some of the strategy on the part of the defendant or at least could have.” 57 Mass.App.Ct. at 191. In Shaw, the Court held that granting the amendment “almost certainly would have necessitated a substantial continuance of the case” and that the proposed amendment, which left wholly unchanged the objectionably vague allegations of the original complaint, reasonably could have been viewed by the motion judge as a “deliberate or grossly negligent attempt to confuse amounting to bad faith, and as causing undue prejudice” to the defendants. 13 Mass.App.Ct. at 263-64.

The defendants argue that chapter 151B pre-empts all claims for wrongful termination in violation of public policy where the motive is invidious discrimination. Melley v. Gillette Corp., 19 Mass.App.Ct. 511, 512-13 (1985), upon which the defendants rely, holds only that a private remedy under the public policy exception to the traditional rule governing at-will employment contracts will not be created if there is a statutory remedial framework to redress the plaintiffs grievances. In the instant case, there is no statutory means of redress. Other cases cited by the defendants are similarly inapposite as they involved employers whose acts were governed by chapter 151B. E.g., Mayo v. Dalbar, Inc., 14 Mass. L. Rptr. 493 (Mass. Super. April 19, 2002); Cormier v. Littlefield, 13 F.Sup.2d 127, 129 (D.Mass. 1998).

In Thibodeau, the Court also rejected the argument that the equal protection clause of the Connecticut constitution, which does not limit the private conduct of individuals or persons, should be construed as a statement of public policy sufficient to override the explicit, contrary expression of legislative intent embodied in the state’s anti-discrimination act. 802 A.2d at 744-45.

 Thibodeau v. Design Group One Architects, LLC, 781 A.2d 363 (Conn.App. 2001), was overruled by the Supreme Court of Connecticut. 802 A.2d at 732.

Other cases relied upon by the plaintiff are also distinguishable. E.g., Badih v. Myers, 43 Cal.Rptr.2d 229, 231 (Cal.App. 1995) (holding that common-law action for discharge on the basis of pregnancy may be maintained against small employer because such a discharge contravenes the fundamental public policy found in state constitutional article providing that “(a) person may not be disqualified from . . . pursuing . .. employment because of sex ...”); Collins v. Rizkana, 652 N.E.2d 653, 658-61 (Ohio 1995) (recognizing cause of action in tort for conditioning employment upon the performance of sexual favors because of public policy expressed in criminal statute prohibiting sexual imposition and finding that the limitation of remedies in the state’s anti-discrimination act does not preclude a wrongful discharge action in cases of multiple-source public policy); Payne v. Rozendaal, 520 A.2d 586, 588-89 (Vt. 1986) (holding that at-will employee discharged prior to enactment of state Fair Employment Practices Act could maintain common-law for wrongful discharge because age discrimination violates clear and compelling public policy determined by looking at the “customs and conventions of the people — in their clear consciousness and conviction of what is naturally and inherently just and right between man and man”).